**BANK OF LEXINGTON,**
**Plaintiff-Appellant,**

v.

**JACK ADAMS AIRCRAFT SALES, INC.,**
**Defendant-Appellee.**

**No. 76–2600.**

United States Court of Appeals,
Fifth Circuit.

April 4, 1978.

*Yoder Bros., Inc. v. California-Florida Plant Corp.,* 5 Cir., 1976, 537 F.2d 1347.

Charles L. Sullivan, Clarksdale, Miss., for plaintiff-appellant.

Jack Adams Aircraft Sales, Inc., pro se.

Before INGRAHAM, GEE and TJOF-LAT, Circuit Judges.

INGRAHAM, Circuit Judge:

This dispute arises out of a complex series of transactions for the sale and financing of aircraft. Summary judgment was rendered against the purchaser's financier who had sued the seller for foreclosing upon the airplane his client had bought. The summary judgment rested upon the explicit trial court finding that the security interest relied upon by the financier was invalid for lack of consideration, and upon the implicit assumption that the security interest relied upon by the seller to foreclose was valid. We reverse on both points, grant judgment

to the financier, and remand for determination of damages.

The seller, Jack Adams Aircraft Sales, Inc. (Jack Adams) is a Delaware corporation doing business in Mississippi and other states. In November 1972, Jack Adams arranged financing through the First National Bank of Dallas, Texas (Dallas bank) for five airplanes which it intended to resell through its Mississippi operations. In exchange for extending credit, the Dallas bank obtained and filed with the Federal Aviation Administration (FAA) pursuant to 49 U.S.C. § 1401, *et seq.*, a separate chattel mortgage for each of the five planes which Jack Adams intended to purchase. In December 1972, Buckeye Air Service, Inc. (Buckeye) of Cleveland, Ohio, negotiated for the purchase of these five aircraft for use from a base of its operations in Kentucky. To finance the purchase, Buckeye borrowed $18,000 from the Bank of Lexington, Kentucky (Lexington bank), on an unsecured note, payable ninety days after execution. Buckeye used $17,500 of this sum as a down payment when it purchased the five planes on December 26, 1972.

Following the negotiations Jack Adams mailed Buckeye an invoice covering the transaction, as well as a bill of sale for each airplane. The two parties had orally agreed that these bills of sale were not to be recorded with the FAA until the balance owing on the aircraft was paid. The bills of sale show no lien outstanding on the aircraft.

Subsequent to the delivery of the aircraft to Kentucky, Buckeye was unable to meet the terms of its agreement with Jack Adams, who demanded that the bills of sale be returned. Shortly thereafter the two parties reached a new accord whereby Buckeye would return four of the airplanes and purchase the one remaining from the original sale. As before, the parties agreed that there should be no filing with the FAA until the purchase price was paid. The new contract also provided that the original $17,500 down payment would be forfeited, that an additional $10,000 payment would be made immediately, and that the balance

of the purchase price, $32,000, would be paid a month later.

Coincident with the signing of this contract, Buckeye executed and delivered a security agreement to the Lexington bank. The agreement secured repayment of the $18,000 debt still owed the bank by encumbering the remaining airplane. The security agreement was purportedly given in return for the bank's forbearance to sue on the original note. Both the agreement and bill of sale were recorded with the FAA.

Buckeye was again unable to satisfy its obligation to Jack Adams, who this time foreclosed upon the aircraft. The collateral was sold at auction and the proceeds were retained by Jack Adams in satisfaction of Buckeye's debt. Jack Adams foreclosed upon the authority of the original security agreement covering the five aircraft which had been consummated with the Dallas bank in November 1972. The security interest had purportedly been assigned to Jack Adams upon repayment to the bank of the debt that it owed.

The Lexington bank instituted the present action, alleging that Jack Adams wrongfully interfered with its collateral by not respecting its lien on the repossessed aircraft. The trial court rendered summary judgment for Jack Adams, holding that the security interest asserted by the Lexington bank was invalid for want of consideration and assuming that the security interest asserted by Jack Adams was enforceable. This appeal, duly perfected by the Lexington bank, causes us to review the validity of each of these two competing security interests.

■ Federal jurisdiction exists in this case by virtue of the diverse citizenship of the parties and the sufficiency of the amount in controversy. 28 U.S.C. § 1332. In a diversity case the federal court is bound to apply state substantive law except in matters governed by federal law. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Our initial task in this case is to determine whether state law applies and, if so, which state's

law governs the two issues presented for review.[1]

In deciding what law to apply we must examine each issue independently. We proceed first to the question of whether the security interest executed and delivered to the Kentucky bank by Buckeye was invalid for want of consideration. The trial court held that this issue was governed by Kentucky law. We agree with that conclusion but, unlike the trial court, reach it by applying the Federal Aviation Act.

The Federal Aviation Act created a framework for a nationwide system to record certain interests in aircraft and major aircraft components. See 49 U.S.C. § 1401, et seq. (1976). To the extent that state law conflicts with any part of the Act, it is preempted under the power of Congress to regulate interstate commerce. *State Securities Co. v. Aviation Enterprises, Inc.*, 355 F.2d 225, 229 (10th Cir. 1966); *Feldman v. Philadelphia National Bank*, 408 F.Supp. 24, 36 (E.D.Pa.1976). There is no question that Congress has preempted the field insofar as registration and recording of title instruments affecting commercial aircraft is concerned. *Id.*; 49 U.S.C. §§ 1401–1403 (1976).

The Act provides that state law shall determine the initial or inherent validity of any instrument recorded under its provisions. *Texas National Bank of Houston v. Aufderheide*, 235 F.Supp. 599, 603 (E.D.Ark.1964). The question of whether the security interest of the Lexington bank was supported by consideration is the type of question contemplated by this section. *Id.* Where more than one state is implicated in the transaction, the law of the state where the instrument is delivered governs. *Id.*; 49 U.S.C. § 1406 (1976). Because the security agreement was delivered to the Lexington Bank in Kentucky, the Act directs us to apply Kentucky law in determining the validity of the instrument.

Jack Adams argued below that the forebearance on the part of the Lexington bank to sue on its note did not constitute valid consideration because the forebearance was for an indefinite period of time. The district court could find no Kentucky law on this issue. After surveying the majority and minority positions on this question, the district court found the prevailing rule of law to be in Jack Adams' favor. The court held that forebearance for an indefinite period of time did not constitute consideration and that the bank's security interest was therefore invalid.

We believe that the trial court erred in applying the common law rule which requires consideration as a prerequisite to the creation of a security interest.[2] We reach this conclusion by applying the Uniform Commercial Code (UCC) as adopted in Kentucky. If there were no Federal Aviation Act, the UCC would govern the creation and validity of a security interest in aircraft. Ky.Rev.Stat. §§ 355.9–302 Comment 8, 9–104 Comment 1 (1970). *See Feldman v. Philadelphia National Bank, supra,* at 37. Because the Federal Aviation Act incorporates Kentucky law on the issue of the validity of the security interest, the Kentucky UCC should be the source of that reference.

The UCC does not require, in the strict common law sense, that consideration be given as a prerequisite for a security interest to attach to collateral—only "value" need be given. Ky.Rev.Stat. § 355.9–204 (1970). According to § 1–201, "a person gives value for rights if he ac-

---

1. The law of five states is potentially implicated. Jack Adams is a *Delaware* corporation, but for the purposes of this suit was doing business in *Mississippi*. The Dallas bank, which handled the original financing of the airplanes, is located in *Texas*. Buckeye, the purchaser of the aircraft, is an *Ohio* company. The Lexington bank from which Buckeye secured its financing, is a *Kentucky* institution. Kentucky is also the state where the security agreement delivered by Buckeye was executed, as well as the state where the airplane has sat from the day of its purchase.

2. Because of our belief that consideration was not needed, we refrain from deciding whether forebearance for an indefinite period of time can constitute consideration in the State of Kentucky.

quires them . . . (b) as security for or in total or partial satisfaction of a pre-existing claim." Ky.Rev.Stat. § 355.1–201(44). There can be no question that the Lexington bank gave "value" when it took a security interest in Buckeye's remaining aircraft to secure its preexisting claim. *See In re Samuels & Co.*, 526 F.2d 1238, 1242 (5th Cir. 1976); *Sherburne Corp. v. Carter*, 133 Vt. 411, 340 A.2d 82 (1975); *Barth Bros. v. Billings*, 68 Wis.2d 80, 227 N.W.2d 673 (1975); J. White & R. Summers, The Uniform Commercial Code 792 (1972). The security interest attached at that time and was duly perfected when the bank filed the instruments with the FAA. Therefore, the Lexington bank held a properly perfected security interest in the airplane.

Having decided that the Lexington bank possessed a properly perfected security interest in the airplane, we must now determine whether Jack Adams also held a valid security interest in the same collateral. The security interest which he now claims is the same one which he originally executed and delivered to the Dallas bank to cover his purchase price of the aircraft. The Dallas bank assigned the security interest back to Jack Adams upon the satisfaction of the underlying obligation. The Lexington bank argues that the Dallas bank could not validly assign the security interest to Jack Adams, since Jack Adams was the promisor under the original note. When Jack Adams tendered the consideration for the assignment to the Dallas bank, so the argument goes, the underlying obligation was extinguished. By granting judgment to Jack Adams, the trial court judged his security interest to be valid, implicitly rejecting Buckeye's position.

 In reviewing this issue, we are again faced with the threshold question of which state's law applies. Because the security agreement was filed with the FAA, our inquiry must once again begin with the provisions of the Federal Aviation Act. The Act preempts only that portion of state law which conflicts with its provisions. *State Securities Co. v. Aviation Enterprises, Inc., supra*, at 229; *Feldman v. Philadelphia*

*National Bank, supra*, at 36; Ky.Rev.Stat. § 355.9–104(1) and Comment 1. See also J. White and R. Summers, The Uniform Commercial Code 948 (1972). Because no provision of the Federal Aviation Act addresses our question of the viability of the assignment of a security interest, state law will provide our rule of decision.

 In order to determine which state's law applies, we turn to the conflict of laws rules of the forum state, Mississippi. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Residential Industrial Loan Co. v. Brown*, 559 F.2d 438, 440 (5th Cir. 1977). As will be seen later, the issue of whether the assignment was valid is governed by the UCC. We therefore refer to the conflict of laws provisions contained in Article 9. Section 9–102 provides that the Article apply only to property "within the jurisdiction of this state." Miss.Code Ann. § 75–9–102 (1972). The law of the jurisdiction where the collateral is located therefore controls. *First National Bank & Trust Co. v. Atlas Credit Corp.*, 417 F.2d 1081, 1082 (10th Cir. 1969). Because the airplane covered by the security interest is located in Kentucky, we shall apply the law of that state.

 The UCC defines security interest as "an interest in personal property or fixtures which secures payment or performance of an obligation." Ky.Rev.Stat. § 355.1–201(37) (1970). A security interest thus has no validity absent its underlying obligation; the satisfaction of that obligation extinguishes the security interest. *See Texas Bank & Trust Co. v. Custom Leasing, Inc.*, 402 S.W.2d 926, 930 (Tex.Civ.App.—Amarillo, 1966, no writ) (holding that payment of debt extinguished accompanying chattel mortgage under pre-code law).

 In order to urge the continuing viability of the security interest, Jack Adams must therefore establish that the consideration he paid for the assignment of the security interest did not eliminate the underlying debt. Authority, either sanctioning or rejecting this unorthodox position, is understandably scarce. Rare is the debtor who argues that tender of the amount due on his note does not satisfy his obligation. Not-

withstanding this lack of authority however, we find the conclusion inescapable that tender of the consideration to the Dallas bank in return for the assignment of the security interest was, in effect, a satisfaction of the debt owed the bank by Jack Adams.[3] This satisfaction extinguished the security interest.

Because the security interest claimed by Jack Adams was invalid, the foreclosure upon the airplane was wrongful and in derogation of the rights of the Lexington bank. We accordingly reverse the judgment of the district court and direct that judgment be entered for plaintiff-appellant Bank of Lexington, and remand the case to the district court for determination of damages.

REVERSED and REMANDED.

---

**3.** *United States v. Boston & Berlin Transportation Co.*, 237 F.Supp. 1004 (D.N.H.1964), is the only case we have found in the field of personal property security interests which allows the assignment of an obligation to a signee of the note. The assignee, a surety, was forced to make payments on the note. The court held that these payments would be considered an assignment instead of a discharge in order to secure the surety's claim against the debtor.

The court was swayed by principles of justice and equity which are not present in the instant case. In *Boston & Berlin Transportation Co.*, the assignment was used as a shield to continue the surety's protection in case of default by the obligor of the note. By contrast, Jack Adams seeks to use the assignment in the instant case as a sword to correct its past mistakes— to secure an obligation that it neglected to secure in the first place.