UNITED COUNTIES TRUST COMPA-
NY, Plaintiff-Appellant,

v.

MAC LUM, INCORPORATED,
Defendant-Appellee.

OLLIE'S TROLLEY, INC., Defendant
and Third-Party Plaintiff-Appellee,

v.

INTERCONTINENTAL LEASING
CORP., Third-Party Defendant.

SPRINGFIELD STATE BANK,
Third-Party Defendant and
Fourth-Party Plaintiff,

v.

FIDELITY AND DEPOSIT COMPANY
OF MARYLAND, Fourth-Party
Defendant.

No. 78–2451.

United States Court of Appeals,
Fifth Circuit.

May 1, 1981.

Rehearing and Rehearing En Banc
Denied May 27, 1981.

Sommers & Altenbach, Fred L. Sommers, Jr., John W. Gibson, Atlanta, Ga., for plaintiff-appellant.

Hansell, Post, Brandon & Dorsey, Gary W. Hatch, Philip S. Coe, Atlanta, Ga., for Mac Lum & Ollie's Trolley, Inc.

Before INGRAHAM, RONEY and THOMAS A. CLARK, Circuit Judges.

RONEY, Circuit Judge:

This is a diversity action brought by a New Jersey bank, United Counties Trust Company, against Ollie's Trolley, Inc., and its wholly-owned subsidiary, Mac Lum, Inc., for breach of a lease for restaurant equipment. United Counties' principal challenge on appeal is the district court's grant of Ollie's and Mac Lum's motion for summary judgment. The motion for summary judgment presented a difficult choice of laws

issue. Holding the district court made a proper choice of law and correctly decided the motion in Ollie's and Mac Lum's favor, we affirm.

United Counties also appeals from the district court's judgment (1) dismissing its original and amended complaints against Mac Lum; and (2) denying its motion to remand the action to a state court. Without further discussion, we uphold the district court's rulings on these points for the reasons stated by the district court.

This litigation arises out of a transaction between Ollie's Trolley, Inc., a Kentucky corporation having its principal place of business in Louisville, Kentucky, and Intercontinental Leasing Corporation, a New Jersey corporation with its principal place of business in that state. On September 23, 1975, Ollie's and Intercontinental executed a sale-leaseback agreement in which Ollie's sold Intercontinental certain restaurant fixtures and equipment located in one of Ollie's restaurants in Atlanta, Georgia. The sales price was $95,000. As part of the arrangement, Intercontinental agreed to lease the equipment back to Ollie's for monthly rental payments over a period of eighty-five months. According to Ollie's president, Carroll Ladt, the purpose of the transaction was to free Ollie's capital invested in the equipment so that the money could be invested elsewhere in the firm's business.

Pursuant to the agreement, a bill of sale, an equipment lease, and other related documents were executed by Ollie's at its offices in Kentucky and transmitted to Intercontinental in New Jersey. The agreement provided that New York law would govern the transaction. There was, however, no connection between New York and the parties, the transaction, or the equipment. The lease also included a "waiver of defense" clause in which the lessee agreed not to assert against the lessor's assignee any claim or defense which the lessee may have had against the lessor.[1]

---

**1.** Paragraph 2 of the lease provided in pertinent part:

**2.** NOTICE OF INTENDED ASSIGNMENT: NO WARRANTIES BY LESSOR AND/OR LESSOR'S ASSIGNEE: MAINTENANCE,

The sale-leaseback transaction was "accepted" by Intercontinental in New Jersey on October 1, 1975. On the same day, Intercontinental assigned the lease to Springfield State Bank of Springfield, New Jersey, which received and accepted the assignment on October 24.

Expecting immediate payment, Ladt of Ollie's made numerous telephone calls to Intercontinental during October seeking the funds. Officials at Intercontinental referred Ladt to Springfield Bank, whose president assured him that Intercontinental was a reputable company and that he was confident payment would be forthcoming. On October 29, Springfield deposited the funds to the account of Intercontinental. Despite several calls by Ladt after October 29 to both Intercontinental and Springfield Bank, neither party told him the bank had made this funds transfer to Intercontinental, and both continued to assure him that payment would soon be tendered.

When payment had not been received by January 6, 1976, Ollie's informed Springfield Bank and Intercontinental the transaction was terminated. Shortly thereafter, the Springfield Bank failed. United Counties acquired its assets and then brought this action for Ollie's refusal to make the payments required by the lease.

In defense of its refusal to make these rental payments, Ollie's claimed a failure of consideration by Intercontinental. It is undisputed that Intercontinental failed to pay Ollie's the sales price for the equipment in compliance with the sale-leaseback agreement and that Springfield knew the equipment had not been paid for when it accepted the lease. The issue to be decided, then, is whether Ollie's may assert this defense against Springfield, assignee of the lease, and United Counties, successor in interest to Springfield's claim. United Counties contends the defense is barred by the lease's waiver of defense clause.

Both parties argue that section 9–206 of the Uniform Commercial Code is controlling, although they disagree on which state's version is applicable. The version of this section adopted by Kentucky and New Jersey differs from that enacted in Georgia. Section 9–206, as enacted in both Kentucky and New Jersey, provides:

(1) Subject to any statute or decision which establishes a different rule for buyers *or lessees* of consumer goods, an agreement by a buyer *or lessee* that he will not assert against an assignee any claim or defense which he may have against the seller *or lessor* is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the Article on Commercial Paper (Article 3). A buyer who as part of one transaction signs both a negotiable instrument and a security agreement makes such an agreement. (Emphasis added.)

If this version of section 9–206 is applicable here, the waiver of defense clause in the lease would not bar Ollie's claim of failure of consideration, because Springfield had notice of this defense at the time it was assigned the lease by Intercontinental. Of course, Ollie's may assert against United Counties, as successor in interest, any defense it had against Springfield.

A different result would be reached, however, if Georgia law is applicable. Georgia's version of section 9–206 does not include the phrases "or lessee(s)" and "or lessor." Ga. Code Ann. § 109A–9–206. Unlike Kentucky and New Jersey, Georgia did not adopt the 1962 revision of the Uniform Commercial Code which extended section 9–206 to leases. In Georgia, common law rather than section 9–206 governs the effect of waiver of defense clauses in leases. Under this common law, the clause would serve to bar Ollie's lack of consideration

COMPLIANCE WITH LAWS: Lessee acknowledges notice of Lessor's intention to assign Lessor's interest in this lease, and upon such assignment, Lessee agrees not to assert against Lessor's assignee any defense, setoff, recoupment, claim or counterclaim which Lessee may have against Lessor, whether arising under this lease or any other transaction or otherwise.

defense. *See, e. g., Dalton American Truck Stop, Inc. v. ADBE Distributing Co.*, 136 Ga.App. 606, 222 S.E.2d 61 (1975); *Grimes v. Community Loan & Investment Corporation of Columbus*, 130 Ga.App. 8, 202 S.E.2d 265 (1973).

Whether Ollie's prevails on its failure of consideration defense therefore depends on which state's substantive law applies. To make this determination, it is necessary to look to the conflict of laws rule of the forum state, in this case Georgia. *See Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Residential Industrial Loan Co. v. Brown*, 559 F.2d 438 (5th Cir. 1977). The district court held that under Georgia's conflict of laws rule for contracts, Kentucky or New Jersey law is applicable. While it appears the district court should have instead relied on the conflict of laws rule set forth in Georgia's version of the Uniform Commercial Code, the court nevertheless reached the correct result.

Section 1–105 is the general choice of laws provision under the Georgia Uniform Commercial Code. Ga. Code Ann. § 109A–1–105. This section permits the parties to provide by agreement which state's law shall govern their transaction but only if the transaction bears a "reasonable relation" to the state so designated. *Id.* While the lease here designated New York law as applicable, this is ineffective because the transaction had no reasonable relation to that state.

Section 1–105 further provides, however, that in the absence of an effective designation, the substantive law applied to the sale-leaseback agreement is determined by an "appropriate relation" test. Ga. Code Ann. § 109A–1–105(1). In this case, Ollie's and Intercontinental were incorporated and had their principal places of business in Kentucky and New Jersey, respectively, and the lease agreement was negotiated and executed at their home offices. The only nexus with Georgia is the location of the equipment. The transaction, then, bore an "appropriate relation" to either Kentucky or New Jersey but not to Georgia. *Cf. United Overseas Bank v. Veneers, Inc.*, 375 F.Supp. 596 (D.Md.1973) (appropriate relation is something more than minimum contacts); *General Electric Credit Corp. v. R. A. Heintz Construction Co.*, 302 F.Supp. 958 (D.Or.1969) (appropriate relation means essentially the same as "significant contacts"). Of course, it makes no difference as to which of the former states' law applies, because they have identical versions of section 9–206, the controlling provision. While the district court reached its result by a slightly different route, it correctly held Kentucky or New Jersey law rather than Georgia law applicable.

With respect to the applicable conflict of laws rule, one further point of uncertainty must be resolved. The broad choice of laws rule provided in section 1–105(1) is expressly limited by subsection (2), which states that, for the specific matters listed therein, other conflict of laws provisions located in the Code govern. Among the specific exclusions from the general conflicts rule are Article 9 secured transactions, which prior to 1978 were governed by the conflicts rule provided in section 9–102. Ga. Code Ann. § 109A–9–102.

Prior to the 1978 revision, section 9–102 provided in pertinent part:

(1) Except as otherwise provided in 109A–9–103 on multiple State transactions and in 109A–9–104 on excluded transactions, *this Article applies so far as concerns any personal property and fixtures within the jurisdiction of this State*

    (a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general tangibles, chattel paper, accounts, or contract rights;

  . . . .

Ga. Code Ann. § 109A–9–102 (emphasis added). The language emphasized in this section sets forth what has been described as a "situs" choice of laws rule. This means the location of the collateral in a secured transaction determines the choice of which

state's law will govern, regardless of other contacts with that state or with other jurisdictions. *See Bank of Lexington v. Jack Adams Aircraft Sales, Inc.*, 570 F.2d 1220 (5th Cir. 1978). *See generally* Weintraub, *Choice of Law in Secured Personal Property Transactions: The Impact of Article 9 on the Uniform Commercial Code*, 68 Mich.L. Rev. 684 (1970); Murray, *Choice of Laws and Multistate Transactions Under Article 9—1962, 1972 and a Proposal for 1982*, 1 Bender's UCC Service Ch. 5B. Although the situs rule was often criticized and indeed was subsequently dropped by Georgia in 1978, it was nevertheless in effect at the time of the transaction in this case.

It has been argued the Article 9 situs rule applying to secured transactions applies here because the assignment of the equipment lease by Intercontinental to Springfield was a security device. This argument, however, fails because it focuses on the wrong transaction. The agreement to be construed is the sale-leaseback agreement between Ollie's and Intercontinental, *not* the assignment between Intercontinental and Springfield Bank. It is the former agreement which contains the waiver of defense clause that lies at the heart of the controversy.

■ Unlike the assignment, there is no indication the sale-leaseback agreement was intended to be a security agreement. "When the lease is intended as a security interest, Article 9 applies. However, a bona fide lease is not affected by Article 9." *DeVita Fruit Co. v. FCA Leasing Corp.*, 473 F.2d 585, 589 (6th Cir. 1973). *See also Sanders v. Commercial Credit Corp.*, 398 F.2d 988 (5th Cir. 1968); *In re Atlanta Times, Inc.*, 259 F.Supp. 820 (N.D.Ga.1966); *McGuire v. Associates Capitol Services Corp.*, 133 Ga.App. 408, 210 S.E.2d 862 (1974); Ga. Code Ann. § 109A–1–201(37). Georgia's section 9–102 would apply only if the sale-leaseback agreement was a secured transaction. Since it is not, section 9–102 is inapplicable. Instead, section 1–105 is the controlling conflict of laws provision, without cross-reference to section 9–102.

■ The fact· the agreement was not a secured transaction, however, does not preclude the application of section 9–206. The Official Comment to this section expressly states the 1962 amendment, adopted by Kentucky and New Jersey, made the "same rules ... applicable to leases as to security agreements, whether or not the lease is intended as security." *See* Official Comment to § 9–206, *reprinted in* 4 Anderson, *Uniform Commercial Code* § 9–206:2 (1971). Courts have consistently held the section applicable to equipment leases similar to the agreement in this case. *See, e. g., Bankers Trust v. Litton Systems, Inc.*, 599 F.2d 488 (2d Cir. 1979); *Bank & Trust Co. v. Arlington Heights v. Arnold N. May Builders, Inc.*, 90 Ill.App.3d 454, 45 Ill.Dec. 850, 413 N.E.2d 183 (1980); *Chemical Bank v. Penny Plate, Inc.*, 144 N.J.Super. 390, 365 A.2d 945 (1976).

Because under Kentucky or New Jersey law the lease's waiver of defense clause does not bar Ollie's claim of failure of consideration, the district court properly granted the motion for summary judgment on the basis of this defense.

AFFIRMED.

THOMAS A. CLARK, Circuit Judge, dissenting:

I dissent. I agree that the result reached by the majority opinion is a more just result than if the district court were reversed. Nevertheless, I cannot do the required mental gymnastics to reach an affirmance.

The fork in the road comes in the analysis of the transaction. The majority determines that UCC Article 9 applies to this transaction in Kentucky and New Jersey but not in Georgia. There is a conflict of laws question here only because the court is confronted with non-uniform versions of UCC § 9–206. Both parties contend that § 9–206 controls the decision. That section under Georgia law permits appellant to win, but the section under Kentucky or New Jersey law permits appellee to win. But how can we look to § 9–206 for the answer and then disavow the conflicts rule prescribed in Article 9? The majority finds

that this is only a sale-leaseback in Georgia and not a secured transaction but that it is a secured transaction in Kentucky and New Jersey. I do not think this baby can be split. United Counties Trust Company, assignee of a note, security instrument, and lease, sued Ollie's Trolley, Inc. When Ollie's executed the sale and leaseback documents it was in contemplation of the transaction being financed by Intercontinental Leasing Corporation. Ollie's specifically agreed to waive any defenses it had against Intercontinental if Intercontinental assigned the lease as security for a loan. Of course, as we know, this waiver is vitiated by UCC § 9–206 in Kentucky and New Jersey, but not so by the same UCC section in the Georgia Code.

Since both the majority and I conclude that Article 9 of the Uniform Commercial Code governs this transaction, I think it is necessary that we look to the UCC for the conflicts rules to guide us. Because the case was brought in Georgia we have to look to the Georgia Uniform Commercial Code as discussed by the majority, *ante* at 1142–1143. In analyzing this precise issue concerning the version of Article 9 in force in Georgia, the forum, at the time of this transaction, Professor Weintraub has written:

> If the conflict-of-laws problem concerns an issue covered by a provision in article 9 [here, § 9–206], the conflicts provisions of 9–102 and 9–103 are applicable. This conclusion is consistent with the primary approach of the choice-of-law provisions in sections 9–102 and 9–103—to indicate when "this Article," meaning the forum's version of article 9, "applies" or "governs."

Weintraub, *Choice of Law in Secured Personal Property Transactions: The Impact of Article 9 of the Uniform Commercial Code*, 68 Mich.L.Rev. 683, 696 (1970). *See also* J. White and R. Summers, Uniform Commercial Code 778 (1972). Furthermore, in the case of *Bank of Lexington v. Jack Adams Aircraft Sales, Inc.*, 570 F.2d 1220 (5th Cir. 1978), my brother, Judge Ingraham, concluded that the conflict of laws provisions in Article 9 should be applied when the Uniform Commercial Code governs the issue of the validity of an Article 9 assignment. 570 F.2d at 1225.

I would apply the conflicts rule of § 9–102 to the facts of this case. This is because the broad choice of laws statement in § 1–105(1) was expressly limited by subsection (2) of § 1–105 which provided that for the specific matters listed other choice of laws provisions located elsewhere in the Code would govern. One of the specific exclusions from the general conflicts rule was Article 9 secured transactions that were to be governed by the conflicts rules of § 9–102 and § 9–103.

Ga. Code Ann. § 109A–9–102 (1962) (amended 1978) provided in pertinent part:

> (1) Except as otherwise provided in 109A–9–103 on multiple State transactions and in 109A–104 on excluded transactions, this Article applies so far as concerns any personal property and fixtures within the jurisdiction of this State.
>
> (a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights;
> . . .

\* \* \* \* \*

The language in § 9–102(1) that Georgia's Article 9 "applies so far as concerns any personal property and fixtures within the jurisdiction of this State," sets forth what was been described by the commentators as a "situs" choice of laws rule. This would mean that the location of the personal property determines the choice of which state's law will govern a secured transaction, regardless of any contacts with other jurisdictions. Although the situs choice of laws rule stated in § 9–102 was often criticized and indeed was dropped from Article 9 by the 1972 amendments to that section that Georgia adopted in 1978, commentators have indicated that if the choice of laws problem confronting a court involves an issue governed by Article 9, the situs conflict of laws provision of § 9–102 should be

applied. *See generally* Weintraub, *Choice of Law in Secured Personal Property Transactions: The Impact of Article 9 of the Uniform Commercial Code*, 68 Mich.L. Rev. 683 (1970); Murray, *Choice of Laws in Multistate Transactions under Article 9— 1962, 1972 and A Proposal for 1982*, 1 Bender's UCC Service, Chap. 5B.

The restaurant equipment which was leased by Intercontinental to Ollie's and which was the subject of the assignment to Springfield Bank was at all times located in suburban Atlanta, Georgia. As a result, we must look to the version of § 9–102 as it was in force in Georgia at all times relevant to this transaction. Accordingly, since the situs of the equipment was Georgia, this court should apply Georgia's version of Article 9 to this transaction.

Bound by the forum's choice of law rules to apply the substantive law of Georgia to the issue before us, the court should look to Georgia's version of § 9–206, Ga. Code Ann. § 109A–9–206:

> (1) Subject to any statute or decision which establishes a different rule for buyers of consumer goods, an agreement by a buyer that he will not assert against an assignee any claim or defense which he may have against the seller is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the Article on Commercial Paper (Article 3). A buyer who as part of one transaction signs both a negotiable instrument and a security agreement makes such an agreement.
>
> (2) When a seller retains a purchase money security interest in goods the Article on Sales (Article 2) governs the sale and any disclaimer, limitation or modification of the seller's warranties.

Since this provision is not made applicable to lessees, Ollie's, as lessee of the restaurant equipment, may not avail itself of the defense of the Springfield Bank's alleged notice of the failure of consideration which Ollie's sought to raise against the assignee, United Counties.

Under Georgia law an agreement by a lessee not to assert claims or defenses against an assignee of the lease is strictly enforceable. *Dalton American Truck Stop, Inc. v. ADBE Distributing Co., Inc.*, 136 Ga.App. 606, 222 S.E.2d 61 (1975); *Short v. General Electric Credit Corporation*, 113 Ga. App. 476, 148 S.E.2d 450 (1966). Whether an assignee has notice of a lessee's defense of failure of consideration is irrelevant under Georgia law. Therefore, Ollie's asserted defense below would not have been sufficient under applicable Georgia law. In my view, the district court erred in granting summary judgment for Ollie's.