In the Matter of SWEETAPPLE PLASTICS, INC., Debtor.

SWEETAPPLE PLASTICS, INC., As Debtor in Possession, Plaintiff,

v.

PHILIP SHUMAN & SONS, INC., Defendant.

Bankruptcy No. 85–30037.
Adv. P. No. 85–3016.

United States Bankruptcy Court, M.D. Georgia, Athens Division.

Aug. 13, 1987.

---

1. A clarification of the limited nature of the trustee's appointment is set forth in a separate order dated August 3, 1987.

William M. Flatau of Brown, Katz, Flatau & Hasty, Macon, Ga., for plaintiff.

Raymond L. Fink of Gross, Shuman, Brizdle, Laub & Gilfillan, P.C., Buffalo, N.Y., for defendant.

Ernest V. Harris, Athens, Ga., Trustee.

### MEMORANDUM OPINION ON COMPLAINT TO AVOID TRANSFER

ROBERT F. HERSHNER, Jr., Bankruptcy Judge.

#### STATEMENT OF CASE

On February 5, 1985, Sweetapple Plastics, Inc., Plaintiff, filed a petition for relief under Chapter 11 of the Bankruptcy Code.[1] On June 6, 1985, Plaintiff, as debtor in possession, filed a complaint against Philip Shuman & Sons, Inc., Defendant, asserting that Defendant had received a preferential transfer in the amount of $10,000 which should be avoided.[2] By leave of the Court, Plaintiff amended its complaint. In its amendment, Plaintiff asserted that Defendant had received an additional preferential transfer in the amount of $20,000. On October 10, 1985, the Court granted Plaintiff's motion to dismiss that portion of its complaint regarding the $10,000 transfer.

The complaint came on for trial on January 14, 1986. The Court, having considered

1. Plaintiff's case was subsequently converted to Chapter 7 on January 7, 1987. Ernie V. Harris was appointed as the trustee of Plaintiff's bankruptcy estate.

2. See 11 U.S.C.A. § 547(b) (West 1979 & Supp. 1987).

the evidence presented at trial and the briefs of counsel, now publishes its findings of fact and conclusions of law.

## FINDINGS OF FACT

In June of 1984, Plaintiff began purchasing materials described as ABS Compound from Defendant. With the exception of one purchase order, Plaintiff verbally placed orders for the ABS Compound with Defendant. After Defendant received Plaintiff's order, Defendant would send an acknowledgement form to Plaintiff to insure that the order Defendant had taken from Plaintiff was correct. The acknowledgement form is a preprinted form with blanks on the front side for the order date, the shipment date, the terms of payment, materials ordered, the price of the material, and other such information. On the back of the acknowledgement, the following statement is printed:

5. JURISDICTION AND LIMITATIONS. Any action or law suit brought against Seller arising out of the delivery of goods sold pursuant to this invoice shall be brought in County of Erie, State of New York, and the laws of the State of New York will apply. It is further agreed that any action or law suits brought by or against the Seller shall be governed by the Statute of Limitations, then in effect in the State of New York.

If any action or proceeding be commenced by the Seller to collect any monies due from the Buyer to the Seller under the terms and provisions of this contract, the Buyer agrees to pay to the Seller (in addition to all other sums required to be paid by the Buyer), as reasonable attorney's fees in connection with such action or proceeding, a sum which is equal to 15% of the unpaid balance of the amount due from the Buyer to the Seller (less the allowances, if any, which the Seller shall be awarded under the provisions of law), together with the expenses of collection, which sum and expenses are to be added to and collected in such action or proceeding.

The back of the acknowledgement also provides under the terms of payment that the net amount due must be paid within thirty days unless otherwise specified. Plaintiff and Defendant had altered this term. Brenda Walker, the former treasurer and comptroller of Plaintiff, and Hyman Shuman, the president of Defendant, testified that Plaintiff had sixty days in which to render payment on its orders with Defendant. The acknowledgement form states that all invoices not paid pursuant to the agreed upon terms are subject to a one and one-half percent monthly delinquency charge.

The following is a summary of Plaintiff's purchases of ABS Compound from Defendant:

| INVOICE NUMBER | DATE ORDERED | DATE SHIPPED | AMOUNT |
|---|---|---|---|
| N11783 | 6/18/84 | 6/22/84 | $24,060.00 |
| N11878 | 7/12/84 | 7/13/84 | $25,860.00 |
| N11869 | 7/12/84 | 7/20/84 | $26,340.00 |
| N11870 | 7/10/84 | 8/07/84 | $25,140.00 |
| N11871 | 7/12/84 | 8/27/84 | $24,301.80 |
| N11949 | 7/26/84 | 9/07/84 | $25,606.80 |
| N11948 | 7/26/84 | 9/11/84 | $24,450.00 |
| N11950 | 7/26/84 | 9/19/84 | $24,000.00 |
| N12231 | 9/19/84 | 9/26/84 | $25,110.00 |

Plaintiff received all of the ABS Compound shipped. Plaintiff made the following payments to Defendant for the materials purchased:

| DATE WRITTEN | DATE RECEIVED | CHECK NUMBER | AMOUNT |
|---|---|---|---|
| 08/24/84 | 08/27/84 | #1187 | $24,060 |
| | | (payment on invoice number N11783) | |
| 09/27/84 | 10/02/84 | #1278 | $25,140 |
| | | (payment on invoice number N11870) | |
| 11/02/84 | 11/6/84 | #1356 | $20,000[3] |
| | | (no invoice number specified) | |
| 11/29/84 | 12/03/84 | #1430 | $10,000[4] |
| | | (payment on invoice number N11878 and invoice number N11869) | |

Plaintiff made timely payments on the first and fourth invoices, but was delinquent on the second, third, and fifth invoices. Ms. Walker testified that as Plaintiff became delinquent in paying the invoices, Defendant's credit manager began telephoning Plaintiff to see when payments would be made. Ms. Walker testified that

---

3. This payment is the payment which Plaintiff alleges is a preferential transfer.

4. Defendant has returned the amount of this payment to Plaintiff.

Plaintiff applied the $20,000 payment made on November 2, 1984 to invoice number N11878, the oldest outstanding invoice on its books. She testified that Plaintiff did not inform Defendant that it intended the $20,000 payment to be applied in this manner. Mr. Shuman testified that Defendant applied the $20,000 payment on account, thus reducing Plaintiff's overall balance to $155,668.60. Defendant deposited the check for $20,000 into its bank account on November 7, 1984. Plaintiff's bank honored this check on November 8, 1984.

When Plaintiff made the $10,000 payment on November 29, 1984, Plaintiff specifically instructed Defendant to apply this payment to the balance on invoice N11878 for the amount of $5,860, and as partial payment on invoice N11869 for the amount of $4,140. Mr. Shuman testified that Plaintiff's instructions were not followed.

Plaintiff's bankruptcy schedules filed with the Court reflect that Plaintiff has unsecured debts totaling approximately $4,815,388. Plaintiff introduced a summary of its assets showing that its maximum recoverable assets total $1,801,060.23. This amount includes the money received from the liquidation of Plaintiff's assets as well as the money Plaintiff seeks to recover from certain parties in pending adversary proceedings.[5]

## CONCLUSIONS OF LAW

Plaintiff seeks to avoid the payment of $20,000 to Defendant on the ground that such payment is a preferential transfer under section 547(b) of the Bankruptcy Code.[6] Section 547(b) provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C.A. § 547(b) (West 1979 & Supp. 1987). Plaintiff has the burden of proving these elements. 11 U.S.C.A. § 547(g) (West Supp.1987). *See also Tidwell v. Fickling & Walker Insurance Agency, Inc. (In re Georgia Steel, Inc.),* 58 B.R. 153, 156 n. 4 (Bankr.M.D.Ga.1984) (citing *Meyers v. Vermont National Bank (In re The Music House, Inc.),* 11 B.R. 139, 7 Bankr.Ct.Dec. 882, 5 Collier Bankr.Cas.2d 1240 (Bankr.D.Vt.1980)).

The Court finds that Plaintiff has met its burden of proof with regards to the first three elements. Plaintiff has established that the payment was a transfer of an interest of the debtor in property to or for the benefit of a creditor for an antecedent debt owed by the debtor before the transfer was made. Defendant admitted that at the time the transfer occurred, Plaintiff was insolvent.[7]

---

**5.** The money sought in the adversary proceedings was reflected on the asset list as the amount Plaintiff sought to recover in its complaint. Several of these proceedings have been terminated, and Plaintiff's total assets are less than originally anticipated.

**6.** Section 1107(a) vests in the debtor in possession all of the rights, title, power, and certain duties of a trustee serving in a case under Chap-

ter 11. 11 U.S.C.A. § 1107(a) (West Supp.1987). Since this case was converted to Chapter 7 of the Bankruptcy Code, Mr. Ernest V. Harris, as Trustee, is the real party plaintiff in this adversary proceeding.

**7.** The Court held a conference call with the parties on November 18, 1985. During this conference call, Defendant admitted that Plaintiff was insolvent at the time of the transfer.

The fourth element of a preferential transfer requires Plaintiff to prove that the transfer was made on or within ninety days before the date of the filing of the petition. 11 U.S.C.A. § 547(b)(4) (West Supp.1987). Plaintiff filed its bankruptcy petition on February 5, 1985; therefore, the ninety-day preference period began on November 8, 1984. Plaintiff transferred the $20,000 to Defendant by check dated November 2, 1984. Defendant deposited the check into its bank account on November 7, 1984, and Plaintiff's bank honored the check on November 8, 1984. Thus, Defendant received the check outside of the preference period, but the check was honored by Plaintiff's bank during the preference period.

This Court has previously held that in determining whether a transfer was made during the preference period, the Court must look to the date when the drawee bank honored the check written by the debtor. *See Tidwell v. Bethlehem Steel Corp. (In re Georgia Steel, Inc.)*, 56 B.R. 509, 518 (Bankr.M.D.Ga.1985), *rev'd on other grounds*, 66 B.R. 932 (M.D.Ga.1986); *Tidwell v. Atlanta Gas Light Co. (In re Georgia Steel, Inc.)*, 38 B.R. 829, 832, 11 Bankr.Ct.Dec. 1163, 1165 (Bankr.M.D.Ga. 1984); *Harris v. Harbin Lumber Co. of Royston (In re Ellison)*, 31 B.R. 545 (Bankr.M.D.Ga.1983). *See also Nicholson v. First Investment Co.*, 705 F.2d 410, 413 (11th Cir.1983); *Artesani v. Travco Plastics Co. (In re Super Market Distributors Corp.)*, 25 B.R. 63, 64–65, 9 Bankr.Ct.Dec. 1155, 1156 (Bankr.D.Mass.1982); *Itule v. Luhr Jensen & Sons, Inc. (In re Sportsco, Inc.)*, 12 B.R. 34, 35–36, 7 Bankr.Ct.Dec. 1025, 1025–26 (Bankr.D.Ariz.1981). The Court notes that in the previous adversary proceedings in which the Court applied this holding, the Court relied upon Georgia law with respect to a transfer of property to determine when such transfer was made. Under the Court's previous holdings, the transfer would have occurred on November 8, 1984, and would be within the preference period.

Defendant, however, contends that the Court's previous holdings on this issue are inapplicable in the present adversary proceeding because of a jurisdiction clause contained in the acknowledgement form. Defendant asserts that this clause makes New York law applicable to this adversary proceeding and that New York law with respect to when a transfer of property occurs is different than Georgia law. Defendant argues that the clause is effective because Plaintiff failed to object to or to alter the terms of the clause. Thus, the Court must first determine whether the jurisdiction clause contained in the acknowledgement form requires the Court to apply New York law. If it does, then the Court must determine when a transfer by check occurs under New York law.

■ After Plaintiff orally placed its orders for the ABS Compound with Defendant, Defendant mailed acknowledgement forms to Plaintiff confirming Plaintiff's order. Under section 2–207(1) of the Uniform Commercial Code,[8] such a written confirmation operates as an acceptance of the oral contract even though it states additional terms from those agreed upon, unless acceptance is expressly made conditional on assent to the additional terms. Based upon the evidence and testimony presented at trial, the Court finds that the jurisdiction clause constitutes an additional term because there is no evidence that the parties agreed upon the jurisdiction clause at the time they entered into their oral agreement. The Court further finds that the acknowledgement form contains no statement that makes acceptance expressly conditional on assent to this additional term. *See* 2 R. Anderson, *Anderson on the Uniform Commercial Code* § 2–207:11 (3d ed. 1982).

■ The Court now must determine if the jurisdiction clause is part of the contract. Between merchants, if the conditions of section 2–207(2) are met, the additional term becomes part of the contract. The Court concludes that under the defini-

---

**8.** Both Georgia and New York have adopted section 2–207 of the Uniform Commercial Code. *See* O.C.G.A. § 11–2–207 (1982); N.Y. U.C.C. Law § 2–207 (McKinney 1964).

tions set forth in section 2–104(1), (3),[9] Plaintiff and Defendant are chargeable with the skill and knowledge of merchants. Thus, section 2–207(2) is applicable. This section provides that the additional term becomes part of the contract unless: "(a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received."

Several courts have analyzed the issue of whether a jurisdiction clause is a clause which materially alters a contract and concluded that such a clause is a material alteration. *See General Instrument Corp. v. Tie Manufacturing, Inc.*, 517 F.Supp. 1231 (S.D.N.Y.1981); *Pacamor Bearings, Inc., v. Molon Motors & Coil, Inc.*, 102 A.D.2d 355, 477 N.Y.S.2d 856 (1984); *National Machinery Exchange, Inc. v. Peninsular Equipment Corp.*, 106 Misc.2d 458, 431 N.Y.S.2d 948 (1980). In arriving at this conclusion, the district court in *General Instrument Corp.* noted that a jurisdiction clause requires a defendant to give up the right to be sued where it is doing business or where it has its principal place of business and consent to be sued in a foreign state. The district court further noted that choice of forum is a significant right and thus a reasonable merchant would probably regard a jurisdiction clause as a material alteration. 517 F.Supp. at 1235. This Court agrees with this reasoning and the reasoning of the courts set forth in the decisions noted above. The Court, therefore, concludes that the jurisdiction clause constituted a material alteration and did not become part of the contract.

■ In the absence of the jurisdiction clause, the Court must determine whether the substantive laws of Georgia or the substantive laws of New York are applicable. To make this determination, the Court must look to the conflict of laws rule of Georgia, because Georgia is the forum state. *See Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *United Counties Trust Co. v. Mac Lum, Inc.*, 643 F.2d 1140, 1143 (5th Cir.1981); *Residential Industrial Loan Co. v. Brown*, 559 F.2d 438 (5th Cir.1977).

Section 11–1–105(1)[10] is the general choice of laws provision under the Georgia commercial code. It provides that in the absence of an effective designation concerning which state's substantive law is to govern, the controlling substantive law is determined by an "appropriate relation" test. *See* O.C.G.A. § 11–1–105(1) (1982); *Mac Lum, Inc.*, 643 F.2d at 1143 (citing *United Overseas Bank v. Veneers, Inc.*, 375 F.Supp. 596 (D.Md.1973) (appropriate relation is something more than minimum contacts); *General Electric Credit Corp. v. R.A. Heintz Construction Co.*, 302 F.Supp. 958 (D.Or.1969) (appropriate relation means essentially the same as "significant contacts")).

Based upon the evidence presented at trial, the Court concludes that under the appropriate relation test, the law of Georgia should be applied. Plaintiff conducted its business in Georgia. By selling the ABS Compound to Plaintiff, Defendant also conducted business in Georgia. The contract under which Plaintiff purchased the ABS Compound was entered into by Plaintiff in Georgia via telephone to Defendant in New York. The ABS Compound was transported from New York via interstate transportation to Georgia. Plaintiff received the ABS Compound in Georgia and used it in Georgia. Plaintiff mailed its payment to Defendant from Georgia with a check drawn upon a Georgia bank. While Defendant deposited the check into its New York bank account, Plaintiff's Georgia

---

**9.** This statute has been adopted by Georgia and New York. *See* O.C.G.A. § 11–2–104(1), (3) (1982); N.Y. U.C.C. Law § 2–104(1), (3) (McKinney 1964).

**10.** O.C.G.A. § 11–1–105(1) (1982). This rule is limited by section 11–1–105(2) of the Georgia Code, which provides that for certain enumerated matters, other conflict of laws provisions located in the commercial code govern. O.C.G.A. § 11–1–105(2) (1982). Subsection (2) is not applicable in the present action.

bank ultimately honored the check. The Court will therefore apply Georgia law.

■ Under Georgia law, the transfer of $20,000 occurred on November 8, 1984, the date that the drawee bank honored the check. The transfer was thus within the preference period, and Plaintiff has met its burden of proof on section 547(b)(4).[11]

The final element Plaintiff must prove, as stated in *Collier,* is that the "creditor received more than it would if the case were a chapter 7 liquidation case, the transfer had not been made, and the creditor received payment of the debt to the extent provided by the provisions of the Code." 11 U.S.C.A. § 547(b)(5) (West 1979); 4 *Collier on Bankruptcy* ¶ 547.08 (15th ed. 1987). Under this test, a creditor is charged with the value of the transferred property plus the value of the amount it would be entitled to receive in a distribution under Chapter 7. *Elliott v. Frontier Properties (In re Lewis W. Shurtleff, Inc.),* 778 F.2d 1416, 1421 (9th Cir.1985). The Supreme Court in *Palmer Clay Products Co. v. Brown* [12] explained the application of this test as follows:

> Whether a creditor has received a preference is to be determined, not by what the situation would have been if the debtor's assets had been liquidated and distributed among his creditors at the time the alleged preferential payment was made, but by the actual effect of the payment as determined when bankruptcy results. The payment on account of say 10% within the four months will necessarily result in such creditor receiving a greater percentage than other creditors, if the distribution in bankruptcy is less

than 100%. For where the creditor's claim is $10,000, the payment on account $1000, and the distribution in bankruptcy 50%, the creditor to whom the payment on account is made receives $5500, while another creditor to whom the same amount was owing and no payment on account was made will receive only $5000. A payment which enables the creditor "to obtain a greater percentage of his debt than any other of such creditors of the same class" is a preference.[13]

Section 547(b)(5) codifies this ruling of the Supreme Court. 4 *Collier on Bankruptcy* ¶ 547.08 (15th ed. 1987).

Plaintiff listed in its schedules nonpriority unsecured debts totaling $4,815,388.36. Plaintiff estimated that the maximum recoverable assets in this bankruptcy case would be $1,801,060.23. In arriving at this estimate, Plaintiff listed certain sums which it hoped to collect through adversary proceedings that it had filed. A number of these adversary proceedings have now been terminated,[14] and the Court calculates the current maximum recoverable assets in this case to be $1,243,383.78. In a bankruptcy distribution, administrative expenses are to be paid first. Following payment of the administrative expenses, payment of claims is to be made according to the order of priority set forth in section 507.[15] The Court notes that Barclays American/Business Credit, Inc. (Barclays) has a claim for approximately $500,000 pursuant to a consent order entered August 14, 1985. The Court further notes that the Internal Revenue Service (IRS) has filed a proof of claim for $3,185,691.98.[16] These

---

**11.** Although the Court has determined that New York law is inapplicable, the Court is not fully persuaded that the result reached under Georgia law would be different if New York law were applied. *See Stream v. CBK Agronomics, Inc.,* 79 Misc.2d 607, 361 N.Y.S.2d 110 (1974), *modified,* 48 A.D.2d 637, 368 N.Y.S.2d 20 (1975). ("Thus 'a check ... becomes absolute payment only when it is paid by the bank in due course.'" (quoting 3 Anderson, Uniform Commercial Code, at 144 (2d ed.))).

**12.** 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655 (1936).

**13.** *Id.* at 229.

**14.** This Court may take judicial notice of Debtor's bankruptcy case files in determining whether the greater percentage test is met. *Rovzar v. Chemical Sales & Serv. Co. (In re Saco Local Dev. Corp.),* 30 B.R. 862, 865 (Bankr.D.Me.1983).

**15.** 11 U.S.C.A. § 507 (West 1979 & Supp.1987).

**16.** The amount listed on the proof of claim filed by the IRS is only an estimate. Although the allowed amount of this claim has not been determined, the Court anticipates that it will be substantial.

claims are priority claims which must be paid before any distribution may be made to unsecured creditors. In addition, several smaller priority claims have been filed which must be paid before unsecured creditors receive a distribution. *See* 11 U.S.C.A. § 507 (West 1979 & Supp.1987).

The Court anticipates that general unsecured creditors will receive nothing in the bankruptcy distribution. Unless the assets are sufficient to provide in liquidation a one hundred percent distribution to the unsecured creditors, any creditor holding an unsecured claim who received a partial payment during the preference period is in a position to receive more than he would have in a Chapter 7 liquidation. *Utility Stationery Stores, Inc. v. American Portfolio (In re Utility Stationery Stores, Inc.)*, 12 B.R. 170, 179 (Bankr.N.D.Ill.1981). *See also In re Lewis*, 778 F.2d at 1421; *Rovzar v. Chemical Sales and Service Co. (In re Saco Local Development Corp.)*, 30 B.R. 862, 865–66 (Bankr.D.Me.1983).

Since the transfer allows Defendant to receive more than it would have received in a Chapter 7 distribution, all of the elements of a preferential transfer have been met. The Court finds the $20,000 transfer to be an avoidable preference under section 547(b).

■ The Court must now determine whether the transfer, or any part of the transfer, is excepted from section 547(b) by subsection (c)(2) of section 547. That subsection provides:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;

11 U.S.C.A. § 547(c)(2) (West Supp.1987). The creditor seeking to establish the nonavoidability of a transfer under subsection

(c) bears the burden of proof. 11 U.S.C.A. § 547(g) (West Supp.1987).

The purpose of subsection (c)(2), known as the ordinary course of business exception, "is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." S.Rep. No. 989, 95th Cong., 2d Sess. 88 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5874; H.R.Rep. No. 595, 95th Cong., 1st Sess. 373 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6329. The exception is designed to protect ordinary trade credit intended to be paid in full within a short period of time. *Marathon Oil Co. v. Flatau (In re Craig Oil Co.)*, 785 F.2d 1563, 1567 (11th Cir. 1986); *Barash v. Public Finance Corp.*, 658 F.2d 504, 511 (7th Cir.1981); *Cohen v. Kern (In re Kennesaw Mint, Inc.)*, 32 B.R. 799, 804 (Bankr.N.D.Ga.1983). The Court concludes that the transfer of $20,000 was in payment of a debt incurred in the ordinary course of business of Plaintiff and Defendant. The question remains whether the transfer was made in the ordinary course of business and according to ordinary business terms.

In determining whether a payment should be considered within the ordinary course of business, the timeliness of the payment is a relevant factor. The scope of the protection provided by section 547(c)(2) is "necessarily limited to trade credit which is *'kept current'* or other transactions which are *paid in full within the initial billing cycle."* *In re Craig Oil Co.*, 785 F.2d at 1567 (emphasis added). Although a late payment is not automatically outside of the ordinary course of business exception, late payments are more likely to be considered outside of the ordinary course of business. *Id.* at 1567–68.

Defendant contends that since Plaintiff failed to direct how the transfer should be applied, it should be apportioned among all of the outstanding invoices. This method would render only a portion of the payment untimely, since some of the payment would

be credited against accounts that were not delinquent at the time of the transfer.[17] The Court must look to state law to determine how the payment should be applied.

As noted earlier, the law of the state of Georgia is controlling in this action. Section 13–4–42 [18] of the Georgia Code provides that if the debtor and creditor fail to direct the manner in which a payment is to be appropriated, then the law shall direct the application of the payment in a reasonable and equitable manner. O.C.G.A. § 13–4–42 (1982). The section further provides that, as a general rule, the oldest lien and the oldest item are to be paid first because the law presumes that the parties intended such an application. *Id.* Applying section 13–4–42 to the facts of the present case, the Court finds that the payment of $20,000 must be applied solely against invoice number N11878, the oldest outstanding invoice at the time of the transfer.[19]

Plaintiff and Defendant had an agreement whereby Plaintiff would render payment on each invoice to Defendant within sixty days from the date of the invoice. The payment of $20,000 was made more than sixty days after the date of invoice number N11878, therefore the payment must be considered a late payment. Plaintiff and Defendant had made contractual arrangements for late payments.[20] The Court regards the arrangements for late payments as a penalty agreement, rather than an agreement to allow late payments in the ordinary course of business.

The Court notes that the transfer was only a partial payment, rather than payment in full. The parties made no contractual arrangements regarding partial payment of invoices. The parties had not established a regular history of business transactions at the time of the transfer, therefore the Court is unable to look to the prior conduct of the parties to determine whether a partial payment would fall within the ordinary course of business of the parties. Mr. Shuman testified that the terms existing between the parties contemplated payment in full and that Defendant expected payment in full on any invoice. The Court concludes that a delinquent partial payment is not within the ordinary course of business of Plaintiff and Defendant, therefore the payment of $20,000 is not protected by section 547(c)(2). Since section 547(c)(2) is not applicable, Plaintiff is entitled to recover the sum of $20,000 from Defendant.

Plaintiff requests that the costs of this adversary proceeding be taxed against Defendant. Because Plaintiff has shown no basis for such an award, the request must be denied.

---

17. Defendant contends that $8,378 would be timely paid and, therefore, would fall within the section 547(c)(2) exception.

18. O.C.G.A. § 13–4–42 (1982). Section 13–4–42 provides:

When a payment is made by a debtor to a creditor holding several demands against him, the debtor shall have the right to direct the claim to which it shall be appropriated. If the debtor fails to do so, the creditor shall have the right to appropriate the payment at his election. If neither party exercises the privilege, the law shall direct the application in such manner as shall be reasonable and equitable, both as to the parties and third

persons, provided that, as a general rule, the oldest lien and the oldest item in an account shall be paid first, the presumption of law being that such is the intention of the parties. *Id.*

19. Section 13–4–42 is applicable to partial payments as well as payments in full. *Giles v. Vandiver*, 91 Ga. 192, 17 S.E. 115 (1892).

20. The front of the acknowledgement form provides: " * * SALES ARE SUBJECT TO A 1½% MONTHLY DELINQUENCY CHARGE ON ALL INVOICES NOT PAID PURSUANT TO ABOVE TERMS."