144 N.J. Super. 390 (1976)
365 A.2d 945
CHEMICAL BANK, PLAINTIFF-RESPONDENT,
v.
PENNY PLATE, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 13, 1976.
Decided October 14, 1976.
*393 Before Judges BISCHOFF, MORGAN and COLLESTER.
Mr. Edward Suski, Jr. argued the cause for appellant (Messrs. Wilinski, Suski, Kille & Scott, attorneys).
Mr. Arthur K. Sirkis argued the cause for respondent.
The opinion of the court was delivered by MORGAN, J.A.D.
Defendant Penny Plate, Inc. appeals from summary judgment entered in favor of plaintiff Chemical Bank (bank) in the amount of $19,248, representing the unpaid balance on a lease of equipment on which Penny Plate was lessee. The bank sued as assignee of the rights of the lessor, Ashley-Thornton Leasing Corporation, third-party defendant, against whom default judgment in favor of both Penny Plate and the bank has already been entered. Ashley-Thornton is, for purposes of this matter, defunct.
Since the matter was decided on the bank's motion for summary judgment, the record is an incomplete one. Before us are the documents of the transaction at issue, essential exhibits, and correspondence and deposition testimony of several persons associated with the bank and with Penny Plate. From this record the basic outline of the transaction and the dispute with respect thereto emerges with some clarity, although from the following discussion the deficiencies in the factual record will become apparent.
In the latter part of 1973 Penny Plate ordered two dies, costing $15,442.40, from A Line Tool and Die Company (not a party). At the time Penny Plate intended an outright purchase of this equipment and had the money with which to accomplish this purpose. Before the deal could be consummated, however, Ashley-Thornton appeared on the scene and offered to lease Penny Plate the equipment, thus conserving Penny Plate's capital by allowing use of the equipment for a monthly rental instead of payment of the full purchase price. Penny Plate accepted the offer and on March 14, 1974 entered into the lease which, by its terms, included *394 an initial payment on deposit and 58 monthly payments thereafter. Ashley-Thornton, lacking the money necessary to purchase the equipment it was leasing to Penny Plate, undertook to obtain financing from the bank. In connection with the pending financing arrangement with the bank, Penny Plate, on March 20, 1974, executed a "Delivery and Installation Certificate" which certified that the dies, the subject of the lease, had been received and accepted by Penny Plate as satisfactory. Two days later, on March 22, 1974, Ashley-Thornton assigned to the bank all of its rights to the money due on its lease with Penny Plate and executed a chattel mortgage on the leased equipment in exchange for the bank's loan of the money to Ashley-Thornton sufficient to pay the manufacturer for the equipment.
On the date of the assignment, March 22, 1974, the bank, fully cognizant of the fact that the equipment had not been paid for, and seeking to insure that payment would reach the manufacturer, required that Ashley-Thornton deliver its check, drawn on the bank's account being opened for it, in the full amount of the purchase price of the equipment together with a stamped envelope carrying Ashley-Thornton's return address. With these papers in its possession, together with Ashley-Thornton's loan application, the loan was granted, the account opened, and on March 27, 1974, five days later, the Ashley-Thornton check in the Ashley-Thornton envelope was mailed to the manufacturer in Louisville, Kentucky.
The Ashley-Thornton check never reached the manufacturer. Although the record is not clear on this point, it appears that for some reason the postoffice was unable to make delivery and the envelope containing the check was returned to Ashley-Thornton in accordance with the return address on the envelope. Ashley-Thornton never informed the bank of the nondelivery of the check, but instead destroyed the check and apparently drew on the account opened for it by the bank.
*395 Prior to this, and on March 22, 1974, Penny Plate, responding to demands from the manufacturer for payment of the dies which it had already delivered and which it was threatening to repossess if the demanded payment was not made, itself made remittance to the manufacturer of the full amount of the purchase price. The check was dated March 22, 1974, and the reverse side thereof discloses that it was cashed in Louisville, Kentucky, on March 26, 1974. At the time the Penny Plate check was sent, and for months thereafter, the bank lacked knowledge that it was made. It also lacked knowledge that the Ashley-Thornton check it had sent to the same manufacturer never reached its intended destination.
On March 26, 1974 the bank sent to Penny Plate its formal notice of assignment instructing Penny Plate to send remittances on account of the lease to the bank at a specified address in New York. A coupon book was enclosed and acknowledgment of receipt of the notice was requested. The notice, however, could not have been received by Penny Plate before March 27, 1974, by which date, of course, Penny Plate's check to the manufacturer had already been cashed.
Thereafter, and in accordance with the instructions contained in the notice of assignment, Penny Plate made remittances to the bank. It was only after the third remittance was made, sometime in June of 1974, that Penny Plate advised the bank that it had paid the manufacturer in full and wanted credit for the amount paid. Penny Plate has not paid anything to the bank on account of the lease since June 1974 and Ashley-Thornton, now defunct, has paid nothing to either the bank or Penny Plate.
In the present action the bank seeks to recover from Penny Plate the full accelerated balance due on the lease which formed the collateral for the loan to Ashley-Thornton. It seeks to avoid the defense of failure of consideration (nonpayment of the purchase price of the equipment) interposed by Penny Plate by claiming the benefit of a "waiver of defenses *396 provision" in the lease between Penny Plate and Ashley-Thornton. That provision reads as follows:
Lessee's obligation to pay directly to the Assignee the amounts * * * which become due from the Lessee as set forth herein shall be absolutely unconditional and shall be payable whether or not the Lease is terminated by operation of law, any act of the parties or otherwise, and the Lessor promises so to pay the same and not to assert against the Assignee any claim or defense, whatsoever, whether by reason of breach of the Lease or otherwise, which it may or might now or hereafter have against the Lessor (the Lessee reserving its right to have recourse directly against the Lessor on account of any such claim or defense). * * *
According to the bank, this clause is effective to preclude assertion of failure of consideration as a defense to the bank's claim for payment under the lease.
According to the Uniform Commercial Code, N.J.S.A. 12A:9-206(1), such agreements are enforceable
* * * by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the Chapter on Commercial Paper (Chapter 3). * * *
In recognition of the limitation on the enforceability of "waiver of defenses" clauses imposed by the Code, Penny Plate asserted before the trial court and in this appeal that the bank had notice, on the date it took the assignment, that the equipment manufacturer had not been paid, and that even after the assignment the manufacturer was not paid, even though the bank, because of the method used to make its remittance, was unaware of that fact. Hence, according to Penny Plate, the bank, having notice of the defense at the time of assignment, is open to the defense notwithstanding the waiver agreement in the lease.
The trial judge, in a written opinion giving his reasons for granting the bank's motion for summary judgment, concluded that nothing in the record supported Penny Plate's assertion that the bank "had any knowledge of any infirmities in, or any defenses to the lease, which it had accepted *397 as collateral security for it's [sic] said loan." He likened the bank's position to that of a holder in due course and, accordingly, entered summary judgment in the bank's favor.
We disagree with the trial judge's reasoning and conclusions and further conclude that an issue unexplored at the trial level precludes entry of summary judgment on the bank's behalf.
The record discloses that Penny Plate made its remittance to the manufacturer by check dated March 22, 1974 (not March 27, 1974 as recorded in the trial judge's opinion). The face of the check, reproduced in the record, reflects that fact. The reverse side of the check established that Penny Plate's check was cashed on March 26, 1974 in Louisville, Kentucky, the location of the manufacturer. The formal notice of the bank's assignment, however, which contained instructions to make payment to the bank directly at an address specified therein and which contained the bank's coupon book to facilitate payment, was first mailed to Penny Plate on March 26, 1974 (the same date Penny Plate's check was cashed) and could not have been received by Penny Plate earlier than March 27, 1974. The Uniform Commercial Code, however, in N.J.S.A. 12A:9-318(3) provides:
The account debtor is authorized to pay the assignor until the account debtor receives notification that the account has been assigned and that payment is to be made to the assignee. * * * [Emphasis supplied].
The Uniform Commercial Code Comment to this provision notes that New Jersey law is in accord and makes the following explanatory observations:
Subsection (3) clarifies the right of an account debtor to make payment to his sellor-assignor in an "indirect collection" situation * * *. So long as the assignee permits the assignor to collect accounts or leaves him in possession of chattel paper which does not indicate that payment is to be made at some place other than the assignor's place of business, the account debtor may pay the assignor even though he may know of the assignment. In such a situation an assignee who wants to take over collections must notify the account debtor to make further payments to him. [Emphasis supplied].
*398 Applying this law to the present matter, although Penny Plate freely admitted during oral argument that it knew that the bank was or would be assignee and, of course, it knew from the lease that the rights thereunder would be assigned, the record before us discloses that the first formal notice that the lease had been assigned to the bank and that the bank was insisting on direct payment to it was given not only days after Penny Plate had made its remittance to the manufacturer but at least one day after the check had been cashed. Clearly, and from the record, the remittance was made on behalf of the assignor (in reliance on the latter's undertaking to reimburse) and in performance of the undisputed obligation of the assignor to make payment of the purchase price to the manufacturer. Since it was made on the assignor's behalf before notice of assignment or receipt of instructions to remit payments directly to the assignee was received, Penny Plate should receive full credit for the payment as a set-off against the bank's claim for the balance due on the lease. It is a well-settled rule, said Vice-Chancellor Stevenson in Weinberger v. Brumberg, 69 N.J. Eq. 669, 674 (ch. 1905), that "`the debtor or party liable on an assigned chose in action is not affected by the assignment until he has notice thereof, and consequently he may set up against the claims of the assignee any defense acquired before notice that would avail him against the assignor had there been no assignment.'" See also, National State Bank of Newark v. Terminal Constr. Corp., 217 F. Supp. 341, 360, n. 14 (D.N.J. 1963), aff'd o.b. 328 F.2d 315 (3 Cir.1964), and cases and authorities cited therein.
Moreover, it cannot be argued with any degree of merit that the payment by Penny Plate before notice of assignment is a defense encompassed within the "waiver of defenses" agreement contained in the lease. The failure to give notice contemporaneously with the execution of the assignment is the responsibility of the assignee bank, not the assignor lessor, and the "waiver" clause applies, by its own *399 express terms, to defenses "it [the obligor] may or might now or hereafter have against the lessor * * *." [Emphasis supplied]. The defense of payment to or on behalf of the assignor is a defense the obligor, Penny Plate, may have against the assignee, and hence does not come within the scope of the "waiver" provision.
Beyond this, however, the assignment to the bank and payment to the manufacturer by Penny Plate were made on the same date, March 22, 1974. Nothing in the record discloses which event occurred first. Hence, it may well be, although this abbreviated record does not disclose it, that Penny Plate's check was mailed before the assignment was made and hence before the bank had any legally cognizable interest in the proceeds of the lease. If such were the fact, then clearly Penny Plate was authorized to make payment on Ashley-Thornton's behalf in order to protect its continued possession of the equipment which the manufacturer was threatening to repossess for nonpayment, and the later assignment would be taken subject to that payment.
There do appear, then, to be genuine issues of fact presented which, at the very least, require denial of plaintiff's motion for summary judgment. Did the assignment take place before Penny Plate mailed its check to the manufacturer? Was the notice of assignment and the instructions for payment contained therein the first such notice and instructions received by Penny Plate? If not, when were the prior notices and instructions sent and received? On this ground alone, summary judgment should have been denied.
Nor does the fact that this theory of defense was not brought to the trial judge's attention require that it be ignored by the court. The proceeding in the trial court was summary in nature; the controversy presented is, by its nature, not a simple matter. Where such is the case, full exploration of the facts by way of plenary proof may well have exposed this issue and permitted its full consideration on the basis of a fully developed record. The failure to appreciate *400 issues vital to disposition, because of the inadequacy of a factual record, presents a real and frequently overlooked hazard to the granting of summary relief.
Furthermore, and in any event, we entertain serious doubts as to whether the "waiver of defenses" clause has any application to Penny Plate's defense. As noted previously, a waiver clause will not, under the Code, protect the assignee favored by it against defenses of which it had knowledge. In the present case, and even with the unsatisfactory abbreviated record before us, it appears undisputed that the bank knew, when it accepted the assignment on March 22, 1974, that the manufacturer had not yet been paid by Ashley-Thornton. This conclusion is compelled because the bank, on its own, undertook to make the remittance, and this five days later it had received the assignment. Thereafter, although the bank attempted, in good faith, to make this payment, it failed to accomplish this objective, but more importantly, by its deficiently conceived method of making the remittance, precluded itself from receiving knowledge of this failure. This lack of knowledge, attributable directly to the method chosen by the bank for making such remittances (the procedure is now changed), was the crucial factor resulting in the loss which is the genesis of this controversy.[1]
The trier of fact would therefore be justified in concluding that the "waiver of defenses" provision was never intended *401 by the parties to preclude a defense arising from inadequate action in connection with the transaction itself by the party claiming benefit of the clause. See Commercial Credit Corp. v. Orange Cty. Machine Wks., 34 Cal.2d 766, 214 P.2d 819, 821-22 (Sup. Ct. 1950). Rather, it could conclude that it was intended to protect the party favored by it from defenses arising out of those portions of the transaction at issue as to which it lacked knowledge and any ability to control, such as those concerning quality or suitability of the underlying goods, or fraud of one of the primary parties. Massey-Ferguson, Inc. v. Utley, 439 S.W.2d 57, 60 (Ky. Ct. App. 1969). Here, in a very realistic sense, Penny Plate's defense, lack of consideration, arose out of the bank's own conduct as well as that of the assignor, or at least a trier of fact could so conclude.
This case concerns, in its essence, the question of which of two basically innocent parties shall be made to bear a loss occasioned by the wrongful conduct of a third party who, because of financial incapacity, is unable to respond in damages. It was Ashley-Thornton which obtained the benefit of the bank's money by taking wrongful advantage of the return of its check. Penny Plate at all times acted in good faith when it made payment to the manufacturer to protect its continued possession of the dies, although perhaps it should have notified the bank, at least after receiving notice of the assignment, that it had done so. The bank too acted in good faith in mailing Ashley-Thornton's check to the manufacturer, although the method used to make the remittance made it possible for Ashley-Thornton to make use of the money covered by the checks and resulted in the bank's being unaware that its payment to the manufacturer had failed. Of these two essentially innocent parties, one of whom must be made to bear a loss caused by the wrongful act of another, the one who was in the best position to avoid what happened should be made to accept the loss. Here the bank is in the business of financing leasing transactions. Its procedures, according *402 to the depositions on record, have been standardized and were designed to minimize the risk of what occurred in the present case. The fact that these procedures proved defective and that such procedures caused the loss might justifiably cause a trier of the fact to conclude that it should be the bank who should bear this loss. Clearly, the harsh result of requiring Penny Plate to both pay the purchase price of equipment as well as the full rental value thereof, when the occasion for doing so arose from defective banking procedures, is not a result which should be summarily embraced.
We conclude that the present case is not one appropriate for summary disposition. Summary judgment in plaintiff's behalf is vacated and the matter remanded to the trial court for plenary trial.
NOTES
[1] Thus, had the misdelivered check been returned to the bank instead of to Ashley-Thornton, the bank would have known that the manufacturer had not been paid and could have resubmitted the payment. At least, Ashley-Thornton would not have been placed in possession of the check and hence in control of the funds which it covered. If the check was sent again to the manufacturer, who was already in receipt of Penny Plate's check for the same equipment, we are willing to assume it would have notified the bank of this remarkable event, and the matter would easily have been straightened out. Hence, the bank's choice of Ashley-Thornton's envelope as the means of making the remittance was the single event which can be identified as the cause of the loss to be borne by one of two essentially innocent parties.