FIRST NATIONAL BANK AT EAST ST. LOUIS, Plaintiff-Appellant, *v.* BOARD OF EDUCATION, SCHOOL DISTRICT NO. 189, Defendant-Appellee.

Fifth District    No. 77-487

Opinion filed January 10, 1979.

William A. Schmitt, of Pope and Driemeyer, of Belleville, for appellant.

Edward Neville, of East St. Louis, and James E. Neville, law student, for appellee.

Mr. JUSTICE KUNCE delivered the opinion of the court:

This is an appeal by the First National Bank at East St. Louis (hereinafter referred to as the bank) from a judgment in favor of the Board of Education of School District No. 189 (hereinafter referred to as the school board, or the board) entered by the Circuit Court of St. Clair County after a bench trial on the bank's action for damages allegedly caused by the school board's failure to honor an assignment to the bank of certain amounts due from the board to East St. Louis Illinois Homes, Inc. (hereinafter referred to as the company).

On June 26, 1968, the company and the school board entered into a written contract for the construction of certain mobile classrooms to be located at various schools in East St. Louis. The contract had been formally approved by the board and recorded in its minutes on April 23 of that year. The company had previously conferred with Harry Cruncleton, executive vice president of the bank, about providing the financing necessary for the company to obtain this contract. Cruncleton's initial reluctance to make the loan was overcome after Charles Merritts, Sr., president of the school board, suggested that the bank take an assignment of income to become due to the company from the board during the term of their contract. Merritts told Cruncleton that he would watch over the transaction and see that the bank received its money.

On October 15, 1968, the company executed an assignment to the

bank of all of the amounts due and to become due under the company's contract with the board. The assignment recited that it was made in consideration of and as security for a loan granted to the company by the bank. On October 17, 1968, the bank made the first of a series of advances of money to the company in connection with the project; the advances were to continue over the next four years.

On October 18, 1968, Cruncleton sent a registered letter to "Mr. Charles Merritts, President, Board of Education, School District #189, East St. Louis, Illinois." The letter purported to give notice that the company had assigned to the bank its right to receive payments under the contract with the board. The last sentence of the letter asked: "Will you please acknowledge receipt and consent to this assignment, and return to me a signed copy of said consent?" The letter did not specifically direct that payments be made directly to the bank.

It is undisputed that Merritts received the letter. The evidence does not clearly indicate, however, whether he received a copy of the assignment, nor whether he received the letter at the board's office or at his home, nor what he did with the letter after he received it. No acknowledgement of the board's receipt of the assignment was ever made to the bank as requested in the letter. The school board's records nowhere contained any mention of either the letter or the assignment.

At no time did the school board make any payment directly to the bank; payments were made to the company, which in turn made payments to the bank. The bank at no time objected to this course of dealing.

The final advance by the bank to the company was made on November 29, 1972, in the amount of $35,000. At the time of this advance, the board had already made its final payment to the company under their contract. The $35,000 advance was not repaid when it became due on February 27, 1973.

On March 21, 1973, in response to a telephone request from the bank president for information pertaining to the status of the school board's account with the company, the business manager-treasurer of the board wrote to advise the bank that the board had satisfied all of its obligations to the company as of September 27, 1972.

On July 24, 1974, the bank filed suit against the school board, alleging that the board had wrongfully paid funds directly to the company in derogation of the bank's rights under the assignment, despite due notification of the assignment to the board. The board denied that it had been notified of the assignment.

After a trial to the court, judgment was entered in favor of the board. This appeal followed denial of the bank's post-trial motion.

On appeal, the bank accepts the trial court's statement of the elements of a cause of action for wrongful payment by an account debtor to an assignor after notice of an assignment:

"The Plaintiff * * * must prove that at the time of the execution of the assignment the Defendant was obliged or indebted to the assignor; that in fact an assignment of that obligation or indebtedness was made to the Plaintiff; and that the Defendant had notice of the assignment prior to payment by the Defendant to the assignor."

The bank contends that it proved each of these elements, and that the judgment in favor of the board was against the manifest weight of the evidence and contrary to the law of this State as expressed in the Uniform Commercial Code.

■■ Long before the adoption of the Uniform Commercial Code, it was an established principle of law that, absent notice of an assignment, a payment to an assignor is valid as against the assignee. (See, *e.g., Wain v. Kravitz*, 324 Ill. App. 488, 496, 58 N.E.2d 626, 630 (1st Dist. 1944), and cases cited therein.

Under the Code, an account debtor is expressly authorized to make payments to an assignor until the account debtor receives notification that the right to receive payments has been assigned and that payments are to be made to an assignee. (Ill. Rev. Stat. 1967, ch. 26, par. 9—318(3).) The only Illinois case which we have found citing this provision of the Code suggests that enforcement of an assignee's rights under an assignment requires *both* notification of the assignment and a demand that payments be made to the assignee. (*First Finance Co. v. Akathiotis*, 110 Ill. App. 2d 377, 249 N.E.2d 663 (1st Dist. 1969).) This is in accord with both the plain language of the statute and the Uniform Commercial Code Comment to section 9—318 of the Uniform Commercial Code:

"So long as the assignee permits the assignor to collect claims * * *, the account debtor may pay the assignor even though he may know of the assignment. In such a situation an assignee who wants to take over collections must notify the account debtor to make further payments to him." Ill. Ann. Stat., ch. 26, at 259-60 (Smith-Hurd 1974).

In the instant case, as noted above, the letter relied upon as notification of the assignment does not state in so many words that payments should be made directly to the assignee-bank; it merely gives notice of the assignment of the right to receive payments.

The conclusion that Cruncleton's letter to Merritts was not intended as a demand for payment directly to the bank is fortified by the fact, relied on heavily by the court below, that the bank acquiesced for so long

in the payments to the assignor-company. As the trial court put it in its judgment order:

> "The evidence is very clear that Defendant made its first payment of rent directly to the assignor, evidently with the consent of the Plaintiff; the evidence is silent on this fact but no complaint was made. The assignor then paid the Plaintiff the proceeds of the first payment, this being in November 1969. * * * There is no further communication between the Plaintiff and Defendant concerning this debt and assignment until March of 1973, three years after the first payment. The Plaintiff by its action acquiesced in the Defendant paying the rent under the contract to the assignor after giving 'notice' to the President of the Defendant."

If the payments by the school board directly to the company were not in fact made with the consent of the bank, as the court below concluded they evidently were, common prudence would seem to have dictated an earlier and more searching investigation and insistence in clear terms that payments be made directly to the bank rather than the company. See *Bank of Salt Lake v. Corporation of the President of the Church of Jesus Christ of Latter-Day Saints*, 534 P.2d 887 (Utah 1975).

But even assuming for purposes of argument that the Cruncleton letter was sufficient demand for direct payment, we have grave doubts whether the account debtor, the school board, "received" the letter within the meaning of the Uniform Commercial Code. In the present context, appellant's reliance on the presumption that a letter correctly addressed and mailed is received by the addressee is misplaced. There is no question that Merritts received the letter; the question is whether Merritts' receipt of notification is equivalent to the school board's receiving it.

■■■ Under the Code, a person (which includes an organization such as a governmental entity) "receives" notification when:

> "(a) it comes to his attention; or
>
> (b) it is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications." Ill. Rev. Stat. 1967, ch. 26, par. 1—201(26).

The record in the instant case is devoid of any evidence that the letter purporting to give notice of the assignment ever came to the actual attention of the board as an entity. Nor do we think that Merritts, despite his involvement in persuading the bank to accept an assignment of the company's interest in the contract with the board, can be considered "the individual conducting that transaction" for the school board within the meaning of the Code. (See Ill. Rev. Stat. 1967, ch. 26, par. 1—201(27).) Merritts had no authority to negotiate for the board; his representations

to Cruncleton were wholly ultra vires. Nothing in evidence reveals that the board or Merritts himself held out Merritts as the person to whom notices should be given. In fact it would appear that the secretary or treasurer would be a more appropriate person than the president to receive such notices. When, in 1973, the bank president sought information about the school board's contract with the company, he communicated with the business manager-treasurer.

The situation here is clearly distinguishable from that described in *Ertel v. Radio Corp. of America*, 261 Ind. 573, 307 N.E.2d 471 (1974). In that case, notice of an assignment was delivered to dock employees who were authorized to accept such mail but never reached the corporation's accounting department. The Indiana Supreme Court held that the account debtor had received the notification within the meaning of section 1—201(26)(b) of the Uniform Commercial Code and that the negligence of the account debtor's employees could not be charged to the assignee.

In the instant case, however, the letter was sent to Merritts by name, and it eventually reached him, apparently at his home. Thus any negligence involved in the failure of the notice to reach the appropriate person or place was that of the bank's agent. (*Cf. Bank of Salt Lake v. Corporation of the President of the Church of Jesus Christ of Latter-Day Saints*, 534 P.2d 887 (Utah 1975).) We do not think, under the peculiar facts of this case, that notice to the board's president was notice to the board.

We conclude that the bank by its failure to demand direct payments, its acquiescence in the board's payments to the company, and its failure to inquire when the requested acknowledgment of its letter was not forthcoming, consented to collection by the assignor and waived its rights against the board.

For the foregoing reasons, the judgment of the Circuit Court of St. Clair County is affirmed.

Affirmed.

G. J. MORAN, P. J., and KARNS, J., concur.