THE FIRST TRUST AND SAVINGS BANK *et al.*, Plaintiffs-Appellants, *v.* SKOKIE FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant-Appellee.

First District (1st Division)   No. 83—1318

Opinion filed June 25, 1984.

Edward A. Berman, of Berman, Roberts & Kelly, of Chicago, for appellant.

Stephen P. Kikoler and Gerald Prokopowicz, both of Rosenthal & Schanfield, of Chicago, for appellee.

JUSTICE McGLOON delivered the opinion of the court:

This is an appeal from a summary judgment order granted in favor of defendant Skokie Federal Savings and Loan Association (Skokie Federal) against First Trust and Savings Bank of Glenview (First Trust).

We affirm.

In October 1978, Skokie Federal loaned Spanish Court II, Ltd. (Spanish Court), $2,400,000 to finance the construction of a 32-unit condominium in Highland Park. Under the terms of the construction loan agreement, proceeds for the payment of "profit and overhead expenses" were to be disbursed to Spanish Court as various phases of the project were completed. An additional $100,000, needed to purchase labor and materials to commence construction, was obtained from First Trust. This loan was secured by the collateral assignment of the construction loan proceeds that Spanish Court was to receive from Skokie Federal.

The language contained in the agreement read as follows:

"For value received, I hereby sell, assign, transfer and set unto The First Trust and Savings Bank, Glenview and Robert L. Munzer, their successors and assigns all rights to profit and overhead from a certain construction loan granted to Spanish Court II, Ltd. by Skokie Federal Savings and Loan Association per their Loan Commitment and Construction Loan Agreement dated October 16, 1978 attached hereto as Exhibit 'A' and made a part hereof and General Contractor's sworn statement attached hereto as Exhibit 'B' and made a part hereof.

Said Assignment is made to secure a loan in the amount of $100,000.00 to Spanish Court II, Ltd., which will be used for the start-up costs (labor and materials) prior to the opening of Skokie Federal Savings and Loan Association's Construction Loan.

I hereby authorize Skokie Federal Savings and Loan Association to direct Pioneer National Title Insurance Company as Construction Payout Agent to make all payouts for profit and overhead payable to The First Trust and Savings Bank and Robert L. Munzer."

The assignment was accepted by First Trust and acknowledged by Skokie Federal on October 23, 1978. Between October 1978 and May 1981, First Trust did not receive any payments of profit and over-

head. Although the owner of Spanish Court, Louis Frappier, occasionally discussed the $100,000 loan with a loan officer at First Trust, Stephen Miles, he never disclosed that Spanish Court was receiving disbursements of construction loan proceeds from Skokie Federal. On May 15, 1981, the final installment of the construction loan proceeds was made to Spanish Court. Thereafter, First Trust made a demand upon Skokie Federal for payment of the construction loan proceeds due under the assignment. Skokie Federal rejected the demand.

First Trust filed an action for declaratory judgment urging the court to determine that Skokie Federal had wrongfully paid funds directly to Spanish Court in derogation of First Trust's rights under the assignment. Thereafter, a motion for summary judgment was filed by Skokie Federal. After a hearing, the trial court granted summary judgment in favor of Skokie Federal based upon its finding that Skokie Federal did not receive an explicit direction to pay First Trust the assigned proceeds.

The sole issue presented for our determination is whether Skokie Federal, as the debtor of an account that had been assigned to First Trust, received sufficient notification that future payments should be made to the assignee to render it liable for continuing to disburse construction loan proceeds directly to Spanish Court.

Section 9—318(3) of the Uniform Commercial Code governs the situation in which a creditor has assigned its right to receive payments to another party. (Ill. Rev. Stat. 1981, ch. 26, par. 9—318(3).) That section provides:

> "The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless he does so the account debtor may pay the assignor."

Section 9—318(3) has been interpreted as an express authorization for an account debtor to make payments to an assignor until the account debtor receives notification that the right to receive payments has been assigned and that the future payments are to be made to the assignee. (*First National Bank v. Board of Education* (1979), 68 Ill. App. 3d 21, 385 N.E.2d 811.) Uniform Commercial Code Comment to section 9—318 further indicates that an account debtor may continue to pay the assignor even though the account debtor has knowledge of the assignment. (Ill. Ann. Stat., ch. 26, par. 9—318, Uniform Commer-

cial Code Comment, at 259-60 (Smith-Hurd 1974). See also *Chemical Bank v. Penny Plate, Inc.* (1976), 144 N.J. Super. 390, 365 A.2d 945; *Valley National Bank v. Flagstaff Dairy* (Ariz. App. 1977), 116 Ariz. 513, 570 P.2d 200.) The Illinois cases which rely on section 9—318(3) of the Code hold that enforcement of an assignee's rights under the assignment requires *both* notification of the assignment and a demand that future payments be made to the assignee. (*First National Bank v. Board of Education* (1979), 68 Ill. App. 3d 21, 385 N.E.2d 811; *First Finance Co. v. Akathiotis* (1969), 110 Ill. App. 2d 377, 249 N.E.2d 663.) This holding is in accord with the plain language of the statute as clarified by Uniform Commercial Code Comment to section 9—318(3).

In the instant case, the assignment does not contain an explicit demand for Skokie Federal to make future disbursements of its construction loan proceeds to First Trust. The relevant language, which we have quoted above, merely "authorizes" Skokie Federal to direct the payout agent to make the disbursements to First Trust. Our review of the record supports the trial court's conclusion that, although Skokie Federal received notice of the existence of the assignment, it did not receive a demand that payments were to be made to First Trust. The uncontradicted affidavit of Steven Munson, an officer of Skokie Federal, states that Skokie Federal received no notification to pay any amount due under the assignment until after Skokie Federal made its final payment to Spanish Court.

Here, as in *First National Bank*, the trial court's conclusion that the assignment itself was not intended as a demand for payment directly to First Trust is fortified by the fact that First Trust acquiesced for so long in the payments to the assignor. In *First National Bank*, the assignee-bank took no action to enforce its right to payments under the assignment for over three years. The court concluded that the bank's failure to take action amounted to a waiver of its rights against the account debtor. It emphasized that "common prudence would seem to have dictated an earlier and more searching investigation and insistence in clear terms that payments be made directly to the [assignee] bank \*\*\*." (*First National Bank v. Board of Education* (1979), 68 Ill. App. 3d 21, 25.) First Trust's failure in the present case to investigate whether and to whom payments were being made for over a 2½ year period constituted a lack of common prudence at least equal to that demonstrated by the bank in *First National Bank*. Accordingly, we hold that First Trust, by its failure to demand direct payments, waived its rights to impose liability upon Skokie Federal.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.