UNION INVESTMENT, INC.,
APPELLEE, *v.* MIDLAND-GUARDIAN
CO., APPELLANT.

(No. C-850160 — Decided
January 29, 1986.)

*Paul J. Vesper* and *Dennis R. Williams,* for appellee.

*Cohen, Todd, Kite & Stanford* and *Michael J. Boylan,* for appellant.

BLACK, P.J. Defendant Midland-Guardian Co. ("Midland") is the maker of a note for $10,000 payable to Brigid E. Kennedy ("Kennedy") that she assigned to plaintiff-appellee Union Investment, Inc. ("Union"), as collateral to secure the debt of third parties Ronald and Rita Wagner ("the Wagners") to Union. Upon execution of the assignment, Union sent a copy of the assignment agreement to Midland, receipt of which was acknowledged. Later, having received no further communication from Union, Midland paid Kennedy the $10,000, without advising Union of the payment. When the Wagners' debt came in default, Union demanded payment from Midland, which was refused. The trial court granted Union's motion for summary judgment of $10,000 against Midland.[1]

The principal questions in Midland's appeal are whether this transaction is governed by the Uniform Commercial Code, and if so, whether Midland's contentions are correct that the notification of the assignment it received from Union did not comply with R.C. 1309.37(C) (UCC 9-318[3]) and that Midland was therefore authorized to pay Kennedy the $10,000 due under the note. We answer both questions in the affirmative.

The note, dated October 4, 1979, was on Midland's printed form, which bore the following statement:

"THIS NOTE IS NOT NEGOTIABLE OR TRANSFERABLE."[2]

[1] The evidence that could properly be considered by the trial court under Civ. R. 56(C) consisted solely of the allegations in the pleadings, which were sketchy to an extreme. Nevertheless, it is obvious on appeal that there is no factual dispute between the parties and that neither of them has any argument with the facts as set forth in this opinion, despite the absence of a full explanation of the background and the relationships between the several parties.

[2] Under the condition of the record on appeal, we must take this $10,000 note at face value. It is due in thirty-two days with interest in the amount of $107.82 (12.129%), and it appears to be nonnegotiable and nontransferable. There is nothing in the record

The assignment, dated October 15, 1979, was addressed to Midland, and the body of it stated as follows (including Midland's acknowledgment):

"For value received, I/we hereby assign and transfer to and pledge to Union Investment, Inc., my/our savings account and/or stock certificate No. 20132 as collateral.

"This assignment shall be a continuing one and shall be effective until cancelled; and shall operate as security for payment of any other debts or liabilities of the undersigned to Union Investment, Inc., now in existence or hereafter contracted.

"You are hereby authorized to charge against the above savings account and/or stock certificate, any note or notes representing unpaid balance of above obligation with interest and costs, if not otherwise paid, and do [sic] hereby irrevocably constitute and appoint Union Investment, attorney-in-fact to transfer the said stock or withdraw and transfer said savings account.

"The undersigned warrants the savings account and/or stock certificate is genuine and in all respects what it purports to be; that the undersigned is the owner thereof free and clear of all liens and encumbrances of any nature whatsoever and that the undersigned has full power, right and authority to execute and deliver this assignment.

"Witness by and for
UNION INVESTMENT, INC.

By: (name illegible)

"/S/ Brigid E. Kennedy

Date 10-15-79

"The signature(s) as shown above compare correctly with our files. Above assignment has been properly recorded on ledger and signature cards. Assignment and transfer to Union shall remain in effect until further notice, which must be delivered in writing by an officer of Union and the depositary institution agrees to act thereunder. Present balance is $10,000.

"By /S/ JOE RIPPE
Assistant Treasurer
AUTHORIZED TELLER
OR OFFICER"

The purpose of this assignment was to secure a mortgage debt owed by the Wagners to Union, for reasons not stated on the record.

The note was due in thirty-two days, but as the parties agree, it was "rolled over" into a new note or notes without surrender to Midland of the note on which Union sued. The parties also agree that at some time between October 15, 1979 and January 19, 1984, Kennedy demanded and received payment of $10,000 from Midland, there being no further significant communication between Union and Midland after October 15, 1979. As stated, after the Wagners' debt to Union went into default, on January 31, 1984, Midland refused Union's demand for payment.

Union filed suit against Midland only, not joining Kennedy or the

---

to show that the note was an "account" under R.C. 1309.01(A)(15) (UCC 9-106), "chattel paper" under R.C. 1309.01(A)(2) (UCC 9-105[b]), a "document" under R.C. 1309.01(A)(6) (UCC 9-105[f]), or an "instrument" under R.C. 1309.01(A)(9) (UCC 9-105[i]). Without a detailed explanation of our reasons, we find that the note does not fall within any of the definitions found in those cited sections. We conclude, therefore, that it is a "general intangible" under R.C. 1309.01(A)(16) (UCC 9-106).

Wagners. On cross-motions for summary judgment, the court ruled in Union's favor. Midland now asserts in its two assignments of error that the court erred when it granted Union's motion for summary judgment and overruled Midland's. Both assignments of error have merit.

The assignment of the note by Kennedy to Union is governed by R.C. Chapter 1309 (UCC Article 9). The assignment was expressly stated to be "as collateral" and it was clearly intended to secure payment or performance of the Wagners' obligation to Union. It created a security interest under R.C. 1301.01(KK) (UCC 1-201 [37]), which provides in pertinent part:

" 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation."

The policy and scope of R.C. Chapter 1309 (UCC Article 9), as set forth in R.C. 1309.02(A) and (B) (UCC 9-102[1] and [2]),[3] are that its provisions shall apply to any transaction intended to create a security interest in personal property or fixtures, created by any of a variety of means including assignment. As stated in the Official Comment to R.C. 1309.02 (UCC 9-102):

"The main purpose of this section is to bring all consensual security interests in personal property and fixtures under this Chapter, except for certain types of transactions excluded by [R.C.] § 1309.04 [UCC 9-104]. * * *"

The Official Comment goes on to state that the principal test is simple: was the transaction intended to have effect as security? If it was, the chapter (article) applies regardless of the form of the transaction or the name given to it. As stated in R.C. 1309.02(C) (UCC 9-102 [3]), the fact that the underlying obligation (the Wagners' mortgage note and deed) is not governed by the chapter (article) does not remove Union's security interest in the note from the scope of the chapter (article).

The note being a general intangible, see footnote 2, Midland was an "account debtor" under R.C. 1309.01(A)(1) (UCC 9-105[1][a]), which reads:

" 'Account debtor' means the person who is obligated on an account, chattel paper, or general intangible[.]"

As an account debtor, Midland was authorized to pay Kennedy (the assignor) until Midland received a proper notification about the assignment and the necessity to make payments to

---

[3] R.C. 1309.02 (UCC 9-102) provides:

"(A) Except as otherwise provided in section 1309.04 of the Revised Code on excluded transactions, sections 1309.01 to 1309.50 of the Revised Code apply: .

"(1) To any transaction, regardless of its form, which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, or accounts; and also

"(2) To any sale of accounts or chattel paper.

"(B) Sections 1309.01 to 1309.50 of the Revised Code apply to security interests created by contract including pledge, assignment, chattel mortgage, chattel trust, trust deed, factor's lien, equipment trust, condi-

tional sale, trust receipt, other lien or title retention contract, and lease or consignment intended as security. Sections 1309.01 to 1309.50 of the Revised Code do not apply to statutory liens except as provided in section 1309.29 of the Revised Code.

"(C) The application of sections 1309.01 to 1309.50 of the Revised Code to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which sections 1309.01 to 1309.50 of the Revised Code do not apply."

The instant assignment of the note does not fall within any of the exceptions found in R.C. 1309.04 (UCC 9-104). We do not deem it necessary to review those exceptions in detail.

Union (assignee), under R.C. 1309.37(C) (UCC 9-318[3]), which provides:

"The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless he does so the account debtor may pay the assignor."

Thus, to be an effective notification requiring the account debtor to make payments to the assignee, the notification must set forth a reasonable identification of the rights assigned, the information that the amount due or to become due has been assigned, and a direction that payment shall be made to the assignee. *Surety Savings & Loan Co. v. Kanzig* (1978), 53 Ohio St. 2d 108, 7 O.O. 3d 187, 372 N.E. 2d 602, syllabus; 48 (Part 2) Ohio Jurisprudence 2d (1966) 578, Secured Transactions, Section 196.

Union's assignment reasonably identified the rights assigned because it bore the number of Midland's note, and it obviously stated that the amount to become due had been assigned to it. The notification, however, failed to direct that payment be made to Union (assignee); the confusing language of the third paragraph merely "authorized" payment to Union. That is not enough. Conforming to the plain meaning of the statute and decisions in other jurisdictions on the same point,[4] we hold that Union's notification failed to direct Midland to pay Union and that thus Midland was not required to do so,

despite its knowledge of the assignment.

Contrary to the decision by the trial court, the fact that the assignment on its face was unconditional, complete and continuing did not "direct" that Midland make payment to Union, and no inference of any direction to pay can be drawn from that fact. As noted in paragraph three of the Official Comment to R.C. 1309.37(C) (UCC 9-318[3]), the mere knowledge of the assignment does not require the account debtor to make payment to the assignee. Under R.C. 1309.37 (UCC 9-318) and 1309.45 (UCC 9-502), an assignee has the option to allow collections from the account debtor to be made to the assignor (Kennedy, in the instant case) until the assignee (Union) wants to take over collection itself.

Thus, Midland was authorized to pay off its note directly to Kennedy and, having done so, Midland has no further obligation under the note. It was error to grant summary judgment to Union and not to grant summary judgment to Midland.

We note two arguments made by Midland that have no effect on our decision. The argument that the assignment was ineffective because the note stated that it was nontransferable is without significance under the provisions of R.C. 1309.37(D) (UCC 9-318[4]), which provides:

"A term in any contract between an account debtor and an assignor is ineffective if it prohibits assignment of an account or prohibits creation of a security interest in a general intangible for money due or to become due or requires the account debtor's consent to such assignment or security interest."

As noted in paragraph four of the

---

[4] *Estate of Hass* v. *Metro-Goldwyn-Mayer, Inc.* (C.A. 5, 1980), 617 F. 2d 1136; *Vacura* v. *Haar's Equipment, Inc.* (Minn. 1985), 364 N.W. 2d 387; *First Fidelity Bank* v. *Matthews* (Mont. 1984), 692 P. 2d 1255;

*First Trust & Savings Bank of Glenview* v. *Skokie Federal Savings & Loan Assn.* (1984), 126 Ill. App. 3d 42, 466 N.E. 2d 1048; *First Natl. Bank at East St. Louis* v. *Bd. of Edn.* (1979), 68 Ill. App. 3d 21, 385 N.E. 2d 811.

Official Comment to that division, this provision "breaks sharply with the older contract doctrines * * *."

The argument that judgment could not be awarded because Union failed to join as defendants two necessary parties (Kennedy as assignor and the Wagners as secured debtors) fails in this instance, under Civ. R. 19, because complete relief could be attained, and has now been attained, between Union and Midland in the absence of the other two parties. Certainly those two were not compulsory parties under Civ. R. 19.1.

We reverse the judgment below, and since Midland is entitled as a matter of law to judgment in its favor, we hereby render that judgment, dismissing Union's complaint.

*Judgment accordingly.*

KEEFE and HILDEBRANT, JJ., concur.