**Walter B. FARNHAM,**
**Plaintiff–Appellant,**

v.

**Darrell WINDLE, Defendant–Appellee.**

**No. 89–3311.**

United States Court of Appeals,
Seventh Circuit.

Argued June 11, 1990.

Decided Nov. 15, 1990.

Thomas C. Dudgeon, Arthur G. Jaros, Jr., Richter, Jaros & Dudgeon, Oak Brook, Ill., for plaintiff-appellant.

Martin D. Tasch, Ira J. Bornstein, Harvey J. Barnett, Barnett, Bornstein & Blazer, Gary S. Benson, Chicago, Ill., for defendant-appellee.

Before CUDAHY, FLAUM and RIPPLE, Circuit Judges.

CUDAHY, Circuit Judge.

Farnham owned a three-story building in Chicago. He sold the building in 1981, but retained a 510–year lease at an annual rent of one dollar on the third-story front unit. He expected the buyer to convert the building into a condominium, at which time he would purchase his unit. But his plans were foiled in November 1987 by a fire on the first floor of the building. Farnham alleges that his unit was damaged by

smoke and water and by holes cut in his roof by the firemen to allow ventilation in their attempts to stop the blaze. The building's owner refused Farnham's repeated requests to repair Farnham's unit and the common areas that gave access to the unit, so Farnham put out $32,000 of his own money for the repairs. He brought this diversity action to gain reimbursement from the building's owner. The district court dismissed the complaint for failure to state a cognizable claim, and Farnham appeals.

At issue here is Chicago's Residential Landlord and Tenant Ordinance, enacted in September 1986. Farnham claims that he is entitled to reimbursement of his expenditures under section 193.1–11(a) ("section 11(a)") of the ordinance; Windle contends that Farnham is limited to the relief specified in section 193.1–11(f) ("section 11(f)").

Section 11(a) specifies a tenant's remedies for "a material noncompliance by the landlord with a rental agreement or with section 193.1–7." Section 193.1–7 requires landlords to maintain their premises in accordance with the municipal code and to make all necessary repairs to fulfill that obligation. Section 11(a) provides that, in case of a violation of section 193.1–7 or the rental agreement, the tenant may (1) give the landlord notice of the breach and state that the lease will terminate in 30 days if the condition is not repaired or (2) "recover damages and obtain injunctive relief...."

Section 11(f) applies in cases of fire or other casualty. If the dwelling unit or common areas are damaged "to the extent that the dwelling unit is in material noncompliance with the rental agreement or with Section 193.1–7, the tenant may" (1) immediately vacate the unit and notify the landlord within 14 days of her/his intention to terminate the rental agreement; (2) if continued habitation is still lawful, vacate any unusable area and reduce rental payments to reflect the diminished fair value of the unit; or (3) if the tenant still desires to continue the tenancy, and if the landlord has promised to make the necessary repairs but fails to complete them in a reasonable time or diligent manner, notify the

landlord within 14 days of noticing the lack of diligence or excessive time elapsed and terminate the rental agreement retroactively to the date of the fire or casualty.

Farnham does not contest that section 11(f) applies to this case; he urges, rather, that *in addition* to the remedies he has under that section, he also has the remedies under section 11(a) because the unit is in material noncompliance with the ordinance, the lease and the city building code. The district court applied the statutory construction principle that specific statutory language controls over general language and held that Farnham was limited to the relief provided by section 11(f).

■ Farnham argues that the district court erred in applying the statutory construction principle of specific over general because the two sections of the ordinance at issue here do not conflict. But we do not understand Illinois law to place such a limitation on the application of the principle; the Illinois rule simply states: "[W]here there are two statutory provisions, one of which is general and designed to apply generally, and the other is specific and relates to only one subject, the specific provision must prevail and must be treated as exception to the general provision." *Commonwealth Edison Co. v. Walsh Constr. Co.*, 177 Ill.App.3d 373, 126 Ill.Dec. 661, 665, 532 N.E.2d 346, 350 (1st Dist. 1988) (citing *Natural Prods. Co. v. County of Du Page*, 314 Ill. 74, 145 N.E. 298 (1924)). In our view, therefore, the district court correctly applied this statutory construction principle to the Chicago ordinance.

■ Further, application of the principle in this case accords with common sense. An apartment can lapse into a state of material noncompliance in a number of ways, including neglect and wear and tear. By making separate provision for material noncompliance that results from a fire or other casualty, the City Council apparently meant to distinguish such instances from other sources of material noncompliance. If the City Council meant to provide 11(f) as an additional mode of recourse to 11(a) for those struck by fire, the Council could

have said that the relief provided under 11(f) is in addition to any remedies the tenant may have under 11(a) or another provision of the ordinance.

Our interpretation of the Chicago ordinance is supported by the Restatement (Second) of Property, Landlord and Tenant (1977). Section 10.2 of the Restatement is quite similar to subsection 11(a) of the ordinance: section 10.2 provides for tenants' remedies in case of a landlord's failure to fulfill his obligations under the lease. Comment a to that section specifically notes that if the leased premises are rendered unsuitable for habitation (or any other use contemplated by the parties in entering the lease) by a "non-manmade force" (such as a fire), the tenant is *not* entitled to damages. This principle is also reflected in section 5.4 of the Restatement, comment f, which states in pertinent part:

> A sudden change in the condition of the premises by a non-manmade force is usually caused by fire, wind, lightning, or other similar causes. The sudden change invokes the rule of this section whenever the change renders the premises unsuitable for the use contemplated by the parties. The only remedy available to the tenant in this situation is termination of the lease because it is unfair to the landlord to burden him with other remedies when he is not personally at fault for the damage which has been caused.

The Restatement suggests strong policy reasons not to accept Farnham's interpretation of the ordinance. Landlords and tenants strike a bargain: the landlord agrees to provide and maintain a habitable dwelling; the tenant agrees to pay rent and not ruin the premises. If an unforeseen event like a fire or a tornado occurs, both parties

suffer. The landlord's real estate value is diminished, and the tenant may have to vacate. When the damage was not anyone's fault, it seems fairest to allow termination of the lease and let the parties go their own separate ways. The landlord may not be in a financial position to repair the apartment; instead, he may decide to take his loss and try to sell the property at the reduced value. The insurance money he may receive (as Windle evidently did here) need not go to repair the building; rather, it may simply compensate the landlord for the lost value of his property. A tenant should not be allowed to force a landlord to incur financial liability just because the tenant wants to (or even needs to) stay. The landlord did not bargain for these extra costs when he entered the lease.

■ But even under Farnham's proffered interpretation of the ordinance, his complaint would not entitle him to reimbursement. Section 11(a) provides that a tenant may obtain compensation for *damages* incurred by the landlord's noncompliance or an *injunction* ordering the landlord to bring the unit into compliance. Section 11(a) *does not* authorize the tenant to make repairs on his own and then charge the landlord for them. Indeed, section 11(c) is the only section that does authorize the tenant to do the repairs and charge the landlord, and under that section, the tenant may only recover the greater of $200 or one-fourth the monthly rent. A tenant may not repair her unit at the landlord's expense for any more than those amounts.[1]

If Windle failed to maintain *common* areas (as opposed to landings or stairways leading only to Farnham's unit) in a habitable condition in circumstances which would militate to Farnham's disadvantage, under

---

1. Farnham also argues that ordering Windle to reimburse him for the repairs would accord with the ordinance's broader purpose of "encourag[ing] the landlord and the tenant to maintain and improve the quality of housing." Ordinance § 193.1–1. The assertion of this general purpose cannot overcome the specific language of the ordinance, which provides tenants with very particularized remedies when the landlord fails to make necessary repairs. We will not add to the ordinance an additional remedy (re-

imbursement for major repairs) that the ordinance's drafters did not see fit to include.

Further, we note that the remedy suggested by Farnham, while it may benefit Farnham and keep his building marketable, may in the long run discourage individuals from investing in residential real estate for fear that a fire or hurricane could foist upon them the duty to rebuild a partially destroyed apartment building.

the rule of the Restatement[2] and recognized equitable principles, but apparently not under the terms of the ordinance, Farnham might have an action for damages. Because a distinct claim for damage to common areas has not been advanced here, however, this issue appears academic. In any event, such a claim, if based on reimbursement, would presumably be limited to $200.

▆ In the alternative to his claims based on the ordinance, Farnham argues that the building code and lease provide him with the right to obtain reimbursement. Farnham is correct that his complaint must survive if it is supported under any legal theory. But he did not take advantage of his opportunity to brief these additional theories to the district court in his memorandum in opposition to Windle's motion to dismiss, and his failure to do so results in waiver. In any event, Farnham's additional theories are in large measure duplicative of his primary argument that he is entitled to reimbursement under section 11(a) of the ordinance. Farnham claims that Windle failed to provide him with sufficient heat during the winter, but this assertion is based on the fact that an ordinary amount of heat would have been insufficient to maintain a habitable temperature in Farnham's unit because of the holes in the roof which the firefighters made in combatting the blaze. Even if we were to consider this claim, we would reach the same decision that we have reached on Farnham's section 11(a) claim: he is merely attempting to assert one way in which the unit was materially out of compliance with the ordinance by breach of the building code. Further, the lease contained the following provision relating to fire and casualty damage:

18. In case the Premises shall be rendered untenantable during the term of this lease by fire or other casualty, Lessor *at his option* may terminate the lease or repair the Premises within 60 days thereafter. If Lessor elects to repair, this lease shall remain in effect provided such repairs are completed within said time. If Lessor shall not have repaired the Premises within said time, then at the end of such time the term hereby created shall terminate. If this lease is terminated by reason of fire or casualty as herein specified, rent shall be apportioned and paid to the day of such fire or other casualty.

Appellant's App. Item # 4 (emphasis added). Not only does this provision fail to lend support to Farnham's claim for reimbursement, it also suggests that the lease may have terminated by its own terms when Windle failed to make repairs to the unit within the specified 60 days. We are, therefore, somewhat puzzled that Farnham has elected to rest his case on this alternative theory.

▆ As a last resort, Farnham urges us to grant him reimbursement as a matter of equity. In this case, however, equity—and economics—are compatible with our construction of the law. It would be unfair to force the landlord in this case to pay for all $32,000 in repairs when the value of his interest in the apartment is virtually zero. It is unlikely that the building will be standing in 500 years, and, in any event, the present value of a right of reversion deferred for 500 years is infinitesimally small. Further, the right to receive one dollar per year adds nothing of value.[3] In contrast, Farnham has unrestricted possession of the property for 500 years, a right indistinguishable in value from fee simple

2. According to section 5.5, comment c of the Restatement, the landlord's obligation to maintain common areas extends even to disrepair resulting from a non-manmade force. If the need for repair of a common area is so insignificant that it does not thwart the tenant's intended use of the leased premises, however, the tenant may not be entitled to recover damages, to reduce or withhold rental payments or to apply rent to the repairs if the landlord fails to make the repairs.

3. Assuming an average interest rate of eight percent and an average inflation rate of four percent (yielding a net rate of return of four percent annually), the present value of the right to receive one dollar in the year 2490 (the year the lease is due to expire) would be about three billionths of a dollar.

ownership. The obligation to pay one dollar per year for 500 years is a negligible burden.[1] Farnham is therefore, from the standpoint of value, the owner, and the $32,000 he invested in the property inures exclusively to him. It would hardly be fair to permit Farnham to demand this $32,000 of Windle. Further, since Farnham's interest in the unit is practically equivalent to fee simple ownership, it is likely that Farnham himself could have obtained casualty insurance on the unit. Farnham argues, of course, that the value of his interest was reflected in the reduced price Windle paid for the apartment building. Even if true, this discount presumably did not contemplate an obligation to rebuild Farnham's unit after a fire.

Farnham values his tenancy a great deal—it is virtually costless, and the building is located in a very desirable area of Chicago. But Farnham cannot charge his landlord for the $32,000 he expended in repairs, especially when the event causing the damage was not within the landlord's control. We therefore affirm.

AFFIRMED.

---

**4.** In fact, since Windle is presumably responsible for paying the property taxes on the entire building, including Farnham's unit, Farnham may actually have no net financial burden at all.