**KENT METERS, INC., Plaintiff,**

v.

**EMCOL OF ILLINOIS, INC., Patrick Jenkins, and the City of Chicago, Defendants.**

No. 88 C 8426.

United States District Court,
N.D. Illinois, E.D.

July 10, 1991.

---

MEMORANDUM OPINION
AND ORDER

MAROVICH, District Judge.

When the City of Chicago ("City") is the debtor to a contract obligation, can the contract creditor assign that account receivable without the City's consent? The assignee here, Kent Meters, Inc. ("Me-

ters") argues yes; the City, the account debtor, argues no. We find in favor of Meters; however, material questions of fact exist which prevent us from entering summary judgment in Meters' favor.

## BACKGROUND

On August 24, 1987, Emcol of Illinois, Inc. ("Emcol") contracted to supply the City with water meters. The contract contained a provision which purportedly prohibited Emcol from assigning any part of the contract without the written consent of the City's purchasing agent. Meters agreed to supply Emcol the water meters on credit in exchange for an assignment to Meters of Emcol's accounts receivable due from the City. Meters opened a joint bank account with Emcol at the Barnett Bank in Ocala, Florida, to receive payment of the City's accounts receivable.

On December 30, 1987, Emcol wrote to the City's purchasing agent and advised the City that all monies due under the contract had been assigned to Meters. The letter specifically authorized and directed the City to make all contract payments due Emcol directly to the Barnett Bank account. The City alleges that it has never received the December 30 letter; however, in a payment voucher dated December 31, 1987, the City directed payment to be made to the Barnett Bank. As will be discussed below, material questions of fact exist regarding whether the City received the December 30 letter.

On January 14, 1988, Meters delivered the water meters to the City. Six days later, Emcol sent invoices totaling $129,-049.50 to the City for payment. These invoices directed the City to make payment to the Barnett Bank account. The City disregarded that instruction and instead paid $129,049.50 to Emcol's Chicago office. Emcol deposited the check in its own account and never paid Meters.

Meters filed suit against the City alleging that the City is liable to it for the full $129,049.50 for failing to direct payment in accordance with the assignment. The City

denies that it received either notice of the assignment or a demand to remit the payment to the Barnett Bank. Meters and the City have filed cross-motions for summary judgment. To decide these motions, we must resolve two issues. First, we must decide whether an account receivable, arising from a contract with the City, can be assigned without the written consent of the City's purchasing agent. To decide this issue, we must determine whether the Illinois Municipal Code, which prohibits such an assignment, or the Illinois Uniform Commercial Code ("UCC"), controls this issue. Second, we must decide whether material questions of fact exist regarding whether the purported assignment in this case was proper under Ill.Rev.Stat. ch. 26, para. 9–318(3).

## DISCUSSION

Summary judgment is appropriate if "the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Renovitch v. Kaufman*, 905 F.2d 1040, 1044 (7th Cir.1990).

■ The City alleges that the assignment by Emcol to Meters was in violation of both the contract and the Illinois Municipal Code, Ill.Rev.Stat. ch. 24, para. 8–10–14. The contract states as follows:

> No contract shall be assigned or any part of the same sub-contracted without written consent of the Purchasing Agent.... The Contractor shall not transfer or assign any contract funds or claims due or to become due without the written approval of the Purchasing Agent having been attained. The transfer or assignment of any contract funds either in whole or in part, or any interest therein, which shall be due or to become due to the Contractor, shall cause the annulment of said transfer or assignment so far as the City is concerned.

This contract language is taken almost verbatim from the Illinois Municipal Code, which states as follows:

.    .    .    .    .

(n)o contract shall be assignable or sublet by the successful bidder without the written consent of the purchasing agent.

Ill.Rev.Stat. ch. 24, para. 8–10–14.

Meters asserts that the contract provision prohibiting assignments of contract funds or claims due is ineffective under the Illinois UCC, § 9–318(4). That section states as follows:

(4) A term in any contract between an account debtor and an assignor is ineffective if it prohibits assignment of an account or prohibits creation of a security interest in a general intangible for money due or to become due or requires the account debtor's consent to such assignment or security interest.

Ill.Rev.Stat. ch. 26, para. 9–318(4). We resolve the apparent conflict between these two Illinois Statutes in favor of Meters.

■ When two statutes are in conflict, Illinois' rules of statutory interpretation require us to apply the more specific statute. *Farnham v. Windle*, 918 F.2d 47, 49 (7th Cir.1990) (diversity case construing Illinois law). The specific statute is considered an exception to the more general statute. *Farnham*, 918 F.2d at 49. Paragraph 8–10–14 prohibits the assignment of the entire contract if the assignor has not received permission from Chicago's purchasing agent. Section 9–318(4), on the other hand, is limited to the assignment of the rights under the contract, specifically, the accounts receivable. Since section 9–318 is concerned specifically with assignment of accounts, while paragraph 8–10–14 is concerned generally with the assignment of contracts, which can include both assignment of the accounts receivable arising from a contract as well as other portions of the contract, we find section 9–318 is more specific than paragraph 8–10–14 and is the controlling statute.

The official comments to Ill.Rev.Stat. ch. 26, para. 9–318(4) support this view. Those comments state as follows:

Subsection (4) breaks sharply with the older contract doctrines by denying effectiveness to contractual terms prohibiting assignment of sums due and to become due under contracts of sale, construction contracts and the like. Under the rule as stated, as [sic] assignment would be effective even if made to an assignee who took with full knowledge that the account debtor had sought to prohibit or restrict assignment of the claims.

Since the City sought to restrict the assignment of its account debt to Emcol, that portion of the contract is ineffective. We therefore deny the City's motion for summary judgment.

■ This holding does not automatically entitle Meters to summary judgment, however. Although we find the contract can be assigned, a material question of fact exists as to whether the requirements for an assignment have been met. The Illinois UCC authorizes an account debtor to pay the assignor until the account debtor receives notification that the amount due has been assigned and that payment is to be made to the assignee. Ill.Rev.Stat. ch. 26, para. 9–318(3). For the assignee to have an enforceable claim against the debtor, the debtor must first have received notification of the assignment and a demand that future payments be made to the assignee. *First Trust and Sav. Bank v. Skokie Fed. Sav. and Loan Ass'n*, 126 Ill.App.3d 42, 45, 81 Ill.Dec. 246, 466 N.E.2d 1048 (1st Dist.1984). Notification to the account debtor, alone, is not enough. *Id.* If the City received both notification and demand, then it would be liable for full payment to Meters for failing to honor the assignment.

■ The only document in the record before us which provides the City with both notice of the assignment and demand to direct payments to the Barnett Bank is the December 30 letter. However, we find there are material issues of fact as to whether the City received that letter.

Meters claims the record establishes that the City received the letter. Meters first argues that the mailbox rule creates a pre-

sumption that the City received the December 30 letter. Second, Meters charges the City has admitted it received the letter. Finally, Meters cites to circumstantial evidence in support of his position. We find that none of these arguments has merit.

■ Under Illinois law, a letter is presumed to be received by the addressee when the correspondence is placed in a properly addressed envelope, has correct prepaid postage and is deposited in the mail. *First Nat. Bank v. Guerra Constr. Co.*, 153 Ill.App.3d 662, 667, 106 Ill.Dec. 582, 505 N.E.2d 1373 (2nd Dist.1987). Direct testimony of the person who performed the mailing is not necessary if corroborating circumstances, such as telephone confirmation that the notice was received, are otherwise sufficient. *Guerra Constr. Co.*, 153 Ill.App.3d at 668, 106 Ill. Dec. 582, 505 N.E.2d 1373. However, any conflict in the evidence should be resolved by the trier of fact. *Guerra Constr. Co.*, 153 Ill.App.3d at 668, 106 Ill.Dec. 582, 505 N.E.2d 1373 (court ruling on a motion for a directed verdict was able to resolve this question of fact because it was sitting as the trier of fact).

In the present case, the record does not indicate that Emcol's letter was placed in a properly addressed envelope, that there was adequate postage, or that it was deposited in the mail. The corroborating circumstances cited by Meters are disputed by the City. Since we cannot resolve this question of fact in ruling on a motion for summary judgment, we find Meters cannot rely on the mailbox rule to create the presumption that the City received the letter.

Second, Meters contends that Gaylon Williams ("Williams"), a customer service manager for Meters, spoke with Maria Rodriguez ("Rodriguez"), a secretary in the City's Purchasing Department, on January 13, 1988. Williams testified that Rodriguez told him the December 30 letter had been received and was being processed. Meters submitted Williams' deposition and affidavit in support of this proposition. However, Williams' affidavit and deposition are contradicted by Rodriguez' deposition testimony, where she testified that she does not recall the January 13 conversation or ever seeing the December 30 letter.

Third, Meters contends that the City's payment voucher, dated December 31, demonstrates that the City must have received the letter because that voucher directs payment to the Barnett Bank. The City claims that the payment voucher was not made on December 31, 1987; instead, the payment voucher was drafted in late January 1988 and back dated to the last day of 1987 pursuant to office policy because the funds for the contract between Emcol and the City were appropriated under the 1987 budget. The City claims it included the Barnett Bank on the voucher because that information was available to it in late January from Emcol's invoice which instructed the City to make payment to the bank.[1]

We find material questions of fact exist as to whether the City received the December 30 letter. Thus, we deny Meters' motion for summary judgment.

## CONCLUSION

For the reasons set forth above, we deny both the City's and Meters' motions for summary judgment. Meters' motion to strike Marise Thomason's affidavit is denied as moot.

■

---

**1.** Emcol's invoice is not sufficient to create an assignment because it does not make a demand on the City to make payment to the bank. *First Trust and Sav. Bank*, 126 Ill.App.3d at 45, 81 Ill.Dec. 246, 466 N.E.2d 1048. Mere notice of an assignment, without a demand to make payment to the assignee, does not obligate the account debtor to pay the assignee. *First Trust and Sav. Bank*, 126 Ill.App.3d at 44, 81 Ill.Dec. 246, 466 N.E.2d 1048.